407 A.2d 870

**COMMONWEALTH of Pennsylvania**

v.

**Harold GUNDERMAN, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 1978.

Decided July 13, 1979.

Petition for Allowance of Appeal Denied Oct. 31, 1979.

144

Robert C. Brown, Jr., Easton, for appellant.

Salvador J. Salazar, Assistant District Attorney, Easton, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

Appellant appeals to this court from his conviction for rape. The complainant, Gail Dietrick, identified appellant as the person who attacked her on December 17, 1975 at approximately 4:45 P.M. while she was walking across the campus of Lafayette College near Easton, Pennsylvania. Miss Dietrick, who was twenty years old at the time, testified that a man approached her from behind, placed his hand over her mouth, and put a knife to her throat. She later described the knife as being of a hunting-type with approximately a five-inch blade. Though Miss Dietrick attempted to dissuade her attacker, first by saying that her friends were expecting her and then by pretending to be asthmatic, her attacker nevertheless forced her to a nearby wooded area where he raped her. It was during the rape that Miss Dietrick first saw her attacker's face.

146

Appellant presents three arguments on appeal: 1) that the trial court erred by refusing to admit certain of appellant's evidence; 2) that the prosecutor's remarks during his closing to the jury unduly prejudiced appellant; and 3) that the trial court, in imposing the maximum sentence authorized by statute (ten to twenty years' imprisonment), did not give due consideration to appellant's background, history and character consistent with the philosophy of individualized sentencing. We find appellant's arguments to be without merit and for the reasons set forth below we affirm.

■ Appellant first argues that the trial court erred by refusing his offer to admit into evidence a certified climatological report. Appellant claims that in cold weather his left hand "freezes," owing to a prior injury, therefore, appellant asserts he could not have been the person who attacked and raped the complainant because the alleged rapist approached his victim from behind while holding a knife in his left hand. Appellant asserts that if his left hand were frozen, he would not be capable of wielding a knife with it, and that the climatological report would have bolstered this assertion. The climatological report indicated that the temperature in the Allentown-Bethlehem-Easton area on December 17, 1975 ranged from a low of 21 degrees Fahrenheit to a high of 43 degrees Fahrenheit, with the temperature at 4:00 P.M. being approximately 42 degrees Fahrenheit. We find that the climatological report appellant sought to introduce lacked an evidentiary foundation sufficient to give it probative value. As the trial court noted, the report could not be used to prove that the temperature on December 17, 1975 was cold enough to cause appellant's hand to freeze because there was no evidence indicating how cold it had to be to substantially affect appellant's grip. Neither was there any indication of the length of exposure required to cause this reaction, nor the extent of appellant's immobility. Therefore, the lower court did not err by refusing to admit this report.

Appellant next argues that the prosecution's remarks during his closing to the jury unduly prejudiced appellant's right to a fair trial. Appellant contends that the lower

court erred by overruling appellant's objections and that the lower court's charge did not offset the prejudice allegedly caused by these particular remarks. We reject appellant's contention because we do not find these remarks to be so impermissibly prejudicial to appellant that they were not susceptible to being cured by the court's cautionary instructions to the jury.

■■■ Appellant cites in his argument four passages from the prosecutor's closing address, however only one of these quoted sections warrants extensive discussion.[1] Accordingly, we focus our attention on the following passage.

"Who has a greater interest, other than Mr. Gunderman, in the results of this case? I submit to you that it is his wife. She also tells us that he was with her from two o'clock in the morning or two o'clock in the afternoon until morning. I think she began to see just how difficult that might be to believe when she said 'I don't mean twenty-four hours a day, though.' Again, does she mean from the first day of her pregnancy or that she knew she was pregnant? Did he become such a concerned father-to-be that at that point, he began spending every solid day with her? Test her interest. Test her testimony and her demeanor on the stand.

"By 'demeanor,' I'm sure all of you know the way she acted, the way she conducted herself on that stand. Look at her.

1. In two of the other statements, the prosecutor merely said "I think you have sufficient testimony and sufficient evidence that you could find this man guilty of the crime." This is merely an argument on sufficiency of the evidence and is permissible. *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936). In the third remark the prosecutor said, "This is the kind of presence of mind that I would expect from a victim of a crime of this type." Here the prosecutor was merely saying that complainant reacted to a rape attack in a way that might be expected. This comment is hardly inflammatory and not so prejudicial as to preclude the jury from independently assessing the credibility of the witness, thus denying the accused a fair trial. *Commonwealth v. Shaffer,* 224 Pa.Super. 564, 307 A.2d 394 (1973); *Commonwealth v. McHugh,* 187 Pa.Super. 568, 145 A.2d 896 (1958).

148

"And then the defense comes up with alibi witnesses. I don't mean to be cruel but I wonder—I'm having difficulty framing this, but I submit to you that Mr. Wilson and his roommate—what was his name—Steve Wilson and Mr. Heckman did come forward to help their friend, did come forward with a story—a story that I think you should find absolutely incredible."

In general, a prosecutor is free to argue the reasonable inferences supported by the record. *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976). A prosecutor may not, however, interject his personal opinion regarding the credibility of any witness, including the accused, nor may he argue facts which may be within his personal knowledge but which are not of record. *Commonwealth v. Pfaff,* 477 Pa. 461, 384 A.2d 1179 (1978); *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Joyner,* supra; *Commonwealth v. Maloney,* supra.[2] Although the prosecutor may not assert his personal belief as to the guilt or innocence of the accused, *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975), the prosecutor may argue that *the evidence* proves the defendant guilty as charged. *Commonwealth v. Joyner,* supra; *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936).

In the instant case, the prosecutor did no more than argue an inference based upon the evidence before the jury. The testimony of the three witnesses mentioned by the

**2.** The American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, § 5.8(a), (b), (Approved Draft, 1971) read, in relevant part:

"a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecution intentionally to misstate the evidence or mislead the jury as to the inferences it may draw."

b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence on the guilt of the defendant."

prosecutor was subject to question.[3]  Though the prosecutor used the first person in this part of his argument, the inferences he was urging were to be based strictly upon the evidence.  The prosecutor did not argue that the jury should find appellant guilty simply because the prosecutor believed appellant to be guilty;  rather, the prosecutor argued an inference based upon the evidence.  This type of argument is permissible.  *Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974);  *Commonwealth v. Hoffman,* 439 Pa. 348, 266 A.2d 726 (1970);  *Commonwealth v. Meyers,* 290 Pa. 573, 139 A. 374 (1927);  *Commonwealth v. Tolassi,* 258 Pa.Super. 194, 392 A.2d 750 (1978).  As we said in *Tolassi,*

"Were we to include phrases like "I submit" and, "I suggest" among those forms of argument deemed improper, we would virtually destroy the Commonwealth's recognized right *to argue fair inferences arising from the evidence* to the jury."  (Emphasis added.)  *Commonwealth v. Tolassi,* 258 Pa.Super. at 209, 392 A.2d at 758.

The reasoning in *Tolassi* applies with equal force to the instant case.

■  Additionally, here, as in *Commonwealth v. Wiggins,* 231 Pa.Super. 71, 328 A.2d 520 (1974), we find that the court's instructions to the jury cured any arguable prejudice to appellant.  The lower court said,

"Now, another area that I have been asked to charge you on—and I think properly so—from the closing remarks and the closing argument of the district attorney, any indication that he has made to you about how he feels about the guilt or the innocence of this defendant is unimportant because that is your domain and he is not

3.  In its opinion, the lower court indicated that the testimony of Heckman and Wilson was incredible for two reasons.  First, their demeanor on the stand indicated that they were uncomfortable with their stories.  Second, these two witnesses were not asked about the date in question, December 17, 1975, until they spoke with appellant's wife in January of 1977.  As the lower court said, "the evidence indicated that nothing extraordinary occurred on December 17, 1975, that would trigger the memory of the alibi witnesses in January of 1977 to remember what they were doing between 4:45 and 5:45 P.M. on December 17, 1975."

permitted to tell you that he does or does not think he is guilty as such. So that you will not be guided by any opinion that he may have expressed to you as to the guilt or innocence of the defendant. That is your domain." Though this instruction does not speak directly to the prosecutor's argument regarding the testimony of certain defense witnesses, the instruction focused the jury's attention on their proper function—deciding guilt or innocence of the accused independent of any opinions expressed by the prosecutor on this matter. Therefore, we do not find that appellant was impermissibly prejudiced by the prosecutor's closing address to the jury.

Finally, appellant argues that the lower court abused its discretion by sentencing appellant to ten-to-twenty years in prison, the statutory maximum for the crime of rape.[4] Appellant contends that the trial court failed to comply with the Supreme Court's mandate in *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977), wherein the court ruled that the trial court's reasons for the imposition of a particular sentence should appear on the record. We find appellant's argument not to be persuasive.

When the lower court sentenced appellant, the court gave the following explanation for its sentence:

"[A]ny sentence other than confinement would, I believe, unduly depreciate the seriousness of this crime. The Court feels that confinement—an extended confinement is necessary to deter not only the Defendant, but also others.

"The Court has considered the nature of the crime and feels it requires and deserves punishment by extended

---

**4.** The legislature has classified the crime of rape as a felony of the first degree. 18 Pa.C.S. § 3121 (1973). By statute, the maximum term of imprisonment for such a crime has been set at twenty years. *Id.* at § 1103. However, the legislature has also mandated that prison sentences are to be for an indefinite period of time. 19 P.S. § 1057 (1964). Accordingly, the legislature has provided that "the maximum limit [for a prison sentence] shall never exceed the maximum time now or hereinafter presented as a penalty for such offense; and the minimum time limit shall never exceed one-half of the maximum sentence prescribed by any court." 19 P.S. § 1057 (1964). Therefore, under the law, appellant received the highest possible penalty for his offense.

incarceration. The Court is convinced that given the opportunity he would repeat the act and is convinced that society needs to be protected from this kind of crime and that imprisonment—An extended imprisonment is necessary to neutralize this dangerous offender."

To this the court later added that it believed that appellant would repeat the act of rape and further said that its sentence "takes into account the trial, my observations of the defendant and the pre-sentencing investigation." Appellant's petition for reconsideration of sentence was granted by the trial court; however, appellant was again given a term of ten-to-twenty years. In its opinion, the lower court essentially reiterated what it said at the original sentencing hearing—the sentence was justified "in view of the nature of the offense and the contents of the presentence report, and the sentence imposed was well within the legal limits."

The legislature has provided that in determining the sentence to be imposed, the court shall consider the amount of confinement that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant.[5] In keeping with this legislative pronouncement, the Supreme Court has held that the particular circumstances of the offense and the character of the defendant are crucial factors in determining a sentence. *Commonwealth v. Martin,* 466 Pa. 118, 133, 351 A.2d 650 (1976). Subsequently, in *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977) (plurality opinion), the Supreme Court provided that a trial court is to put its reasons for the imposition of a particular sentence on the record. *Id.,* 474 Pa. at 122, 377 A.2d 140. Many justifications for this requirement were given, including that it will act as a safeguard against arbitrary decisions and will aid appellate courts in ascertaining whether the sentence was based upon accurate, sufficient and proper information. *Id.,* 474 Pa. at 129–131, 377 A.2d 140.

Turning back to the facts in appellant's case, we find that the lower court complied with the mandate of

5.   18 Pa.C.S. § 1321 (Supp.1978).

*Commonwealth v. Riggins,* supra, in that the court considered both the particular circumstances of the offense and the character of appellant. Appellant's crime was a crime of violence—raping a young woman at knifepoint—and the trial court correctly considered this factor when it imposed sentence.[6] Additionally, the court incorporated its own observations and impressions of appellant at trial into its sentencing considerations,[7] concluding that appellant would probably repeat the act of rape. All of these factors fall within the parameters set down by the legislature and the court.[8] Accordingly, we find that the lower court did not abuse its discretion in sentencing appellant as it did and we affirm.

Judgment and sentence affirmed.

SPAETH, J., concurs in the result.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

---

**6.** See 18 Pa.C.S.A. §§ 1325(1), (2) (Supp.1978).

**7.** See 18 Pa.C.S.A. §§ 1325(1), (2) (Supp.1978).

**8.** See 18 Pa.C.S.A. §§ 1322–1326 (Supp.1978); *Commonwealth v. Riggins,* supra.