441 A.2d 1277

**COMMONWEALTH of Pennsylvania**

**v.**

**Kenneth WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 28, 1981.

Filed Feb. 19, 1982.

Buford Tatum, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, McEWEN and WIEAND, JJ.

McEWEN, Judge:

Appellant, Kenneth Williams, was convicted of rape, solicitation to commit sodomy, assault with intent to commit sodomy and criminal conspiracy on December 16, 1975, following a jury trial before the Honorable Matthew J. Bullock, Jr. of the Court of Common Pleas of Philadelphia County. Bail, which had originally been set at one thousand dollars, was increased after the verdict to two thousand five hundred dollars pending disposition of post-trial motions. The appellant failed to appear in Court on May 7, 1976, the date scheduled for the argument upon those motions. The Court issued a bench warrant but appellant remained a fugitive for the next four years.

Police finally apprehended appellant in early 1980. Upon his return to custody, appellant renewed his post-verdict motions in his Brief in Support of Motion for a New Trial or Arrest of Judgment.

On June 4, 1980, Judge Bullock denied the post-verdict motions, revoked bail,[1] and sentenced appellant to not less than three and one half nor more than seven years imprisonment on the rape conviction. Sentences on the accompanying convictions were suspended. This appeal followed.

Appellant contends that he should be granted a new trial alleging (1) that the Commonwealth denied him due process

---

1. We have before us, in addition, the application of appellant to set bail which, in light of this Opinion, we have denied.

of law by concealing or destroying possibly exculpatory evidence and (2) that he was denied the right to a fair trial by virtue of improper remarks made by the prosecuting attorney during closing argument. We affirm the judgment of sentence of the trial court.

On the evening of March 18, 1972, appellant hosted a party in his West Philadelphia apartment which was attended by the complainant, Ms. Smith, in the company of her boyfriend Mr. Gary White. The complainant and her escort arrived at the party at about 10:00 or 10:30 p.m. Ms. Smith had never before seen appellant or any of the other people present at the party. Gary White left Ms. Smith at the party at one point in the evening to make a telephone call and did not return. During his absence, appellant requested Ms. Smith to accompany him, his brother, Richard Williams, a cousin, and another couple on some errands. The other couple soon left the group and, after several stops, Ms. Smith was driven to another West Philadelphia apartment which she entered at the urging of appellant and the two other men. A fourth man, Travis Hopson, was present in the apartment when they arrived. While there, the brother of the appellant knocked Ms. Smith's head turban to the floor and as she went into the bathroom to replace it, the fourth male, Travis Hopson, put a meat cleaver to her throat and ordered her to remove her clothes. Appellant, along with his brother and his cousin, then entered the bathroom clad only in their shorts and the four men together watched as she undressed. At first she cried but then ceased when one of the men said, "You had better shut up and calm down because if you don't I will show you what happened to the other women who don't cooperate with us." (N.T. 79–80). There then followed the acts of rape, attempted rape and oral sodomy by the four men, including an act of rape by the appellant. After the four men had finished, the appellant threatened to "put a contract out" on her if she informed police of the incident. (N.T. 80–87). The men finally released Ms. Smith at 5:00 a.m. the next morning and drove

her to her apartment.[2]   Ms. Smith immediately proceeded to the apartment of a girlfriend in the same building, woke her, and told her, while crying hysterically, that she had been raped.   (N.T. 87–88).

Ms. Smith reported the rape to the police department that same morning of March 19, 1972.   The police, at that time, summarized her statement on a Police Department Incident Report form.   She, subsequently, gave her formal statement to Sergeant George Craig which he then gave to Detective Joseph Brignola.   Nearly three years elapsed before the appellant was arrested on the charges in question.[3]

Appellant argues first that he was denied due process of law because the Commonwealth concealed or destroyed "possibly exculpatory evidence."   The evidence alluded to is the formal statement which the complainant gave to the police shortly after the incident took place.   The testimony of the police officers involved indicated that three copies of the formal statement were made after it was recorded but, at the time of trial, none could be located.   Detective Brignola testified at the trial that, although he, personally, had been in possession of one copy of the statement, he could not find it at the time of trial.   Extensive efforts by the police to locate a record copy of the statement were unsuccessful. Despite the assertion of appellant that the formal statement was "possibly crucial to the defense," he, nevertheless, concedes in his brief that the statement implicated him in the offenses, since an arrest warrant was sworn out against him shortly after the statement was taken.   Appellant argues only that the statement could have been used to impeach the credibility of the victim on cross examination and that the inability of the Commonwealth to produce the statement

**2.** Appellant was not only an actual rapist but also a participant in the entire occurrence from the time the victim was initially assaulted until the time she was released.   It is clear, therefore, that since he was a member of the conspiracy, the evidence was sufficient to convict him of all of the offenses committed and he does not otherwise contend.

**3.** The appellant does not in this appeal challenge the lengthy delay between the incident and his arrest in May of 1975.

constituted a violation of the principle established by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

It is undisputed that "[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Commonwealth v. Lochman*, 265 Pa.Super.Ct. 429, 438, 402 A.2d 513, 518 (1979) quoting from *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963); *See Commonwealth v. Cain*, 471 Pa. 140, 369 A.2d 1234 (1977). Even where defense counsel does not make a specific request, the prosecution has the duty to make available to the defense evidence that is truly exculpatory rather than merely favorable. *Commonwealth v. Lochman, supra; Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976). "Exculpatory evidence is that which extrinsically tends to establish the defendant's innocence of the crimes charged as opposed to that which, although favorable, is merely collateral or impeaching." *Commonwealth v. Lochman, supra*, 265 Pa.Super.Ct. at 438, 402 A.2d at 518; *Commonwealth v. Gee, supra.*

The Supreme Court further elucidated the standard of materiality it set forth in *Brady* in the case of *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342, 354–55 (1979) stating:

The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated on the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of

relatively minor importance might be sufficient to create the reasonable doubt.

We believe that the trial court was presented with ample evidence to support the guilty verdict against appellant and we are satisfied that the principles of *Brady* were not violated where defense counsel was afforded the opportunity to examine the initial and preliminary report given to the police prior to the formal statement which was lost. Although the preliminary report was in briefer form and made before the formal statement was completed, it, nonetheless, was consistent with the testimony of the victim at the trial. The trial court found this report completely consistent with the testimony of the victim and the record reflects that it was further corroborated by the testimony of the girlfriend to whom Ms. Smith first reported the rape. By permitting defense counsel the opportunity to cross examine the victim and impeach her credibility with the aid of this preliminary report, the trial court eliminated any reasonable contention on the part of appellant that he was denied due process because of the inability of the Commonwealth to produce the formal statement at trial. *Cf. Commonwealth v. Mace*, 234 Pa.Super.Ct. 463, 341 A.2d 505, *cert. denied*, 423 U.S. 996, 96 S.Ct. 423, 46 L.Ed.2d 370 (1975) (no denial of due process where the effect of the inadvertent destruction by the Commonwealth of physical evidence was minimized by the fact that the Commonwealth in good faith made other relevant evidence available to the defense for use at trial).

Defense counsel chose not to use the preliminary report during his cross examination of Ms. Smith. His failure to use that report to impeach her recollection of the events of the evening, reflects a trial strategy which, as the District Attorney observed in his brief, was "an attempt to screen out the available indicia of the complainant's truthfulness and, in turn, to highlight as much as possible the absence of her formal statement." (Brief of Appellee at 7).

We concur with the finding of the trial court that the Commonwealth cannot reasonably be said to have concealed

exculpatory evidence, where there was no evidence that the statement was exculpatory and where "it was in all probability favorable to the Commonwealth." (Slip Op. at 9). Therefore, we do not believe that the appellant was denied due process by reason of the inability of the Commonwealth to produce the formal statement itself at trial.

In his second argument, appellant contends that a variety of the remarks of the prosecutor during closing argument were improper and violated the American Bar Association Standards for Criminal Justice Relating to the Prosecution Function [hereinafter ABA Prosecution Standard][4] which the Pennsylvania Courts have cited with approval in a number of decisions. *See, e.g., Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173, *cert. denied*, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979); *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978); *Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800 (1977).

■ Initially, appellant claims that the District Attorney in his summation improperly characterized the quality of the summation of defense counsel. He challenges (1) the District Attorney's description of his summation as "vicious character assassination and vicious low-level argument," and (2) the comment of the prosecutor that defense counsel was taking the "low-road" while he would follow the "high-road," as well as (3) the statement of the prosecutor that the argument of defense counsel concerning the missing statement was "done to appeal to your emotions." We do not consider these comments to be violative of the aforementioned ABA Prosecution Standards or to be so prejudicial as to warrant reversal and the grant of a new trial. Indeed,

4. The American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, § 5.8(a), (b) (Approved Draft, March, 1971) state in pertinent part:

    (a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecution intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

    (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

appellant does not specify or explain how the remarks violate the standards, but simply asserts that these types of remarks have been condemned by this Court, our Supreme Court and by the ABA Standards. Although the tenor of certain of these comments may be harsh,[5] "not every intemperate or uncalled for remark by the prosecutor requires a new trial." *Commonwealth v. Youngkin*, 285 Pa.Super.Ct. 417, 430, 427 A.2d 1356, 1362 (1981). A new trial need only be granted where "the unavoidable effect [of the language] would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975) quoting *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968); *Commonwealth v. Youngkin, supra*. These remarks cannot be said to have had so prejudicial an effect.

Finally, the appellant sets forth a series of excerpts from the closing argument of the District Attorney in which he claims the District Attorney expressed his personal opinion as to the credibility of the complainant and the guilt of the appellant. The excerpts are as follows:

I will very candidly and plainly say to you her testimony is worthy of belief. And on the basis of her testimony defendant is clearly guilty as charged. (N.T. 384).

[B]ut the point is ladies and gentlemen, she was telling you the truth as honestly as she could. (N.T. 385).

[I]f you have a problem with Ms. Smith versus the defense in terms of reconcile [sic] who to believe, and I already believe in arguing to you that you should not have such a problem. (N.T. 398).

[B]ut I mention the results of what happened to Ms. Smith because I want you to understand, by golly, she is telling you the truth. (N.T. 402).

The law is clear that personal assertions of the guilt of a defendant or of the credibility of a witness' testimony by the

---

5. Our review of the record indicates that perhaps these comments were fair responses to the arguments of defense counsel during his summation.

prosecutor during closing argument constitute reversible error and warrant the grant of a new trial. *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975). *Commonwealth v. Gunderman*, 268 Pa.Super.Ct. 142, 407 A.2d 870 (1979). During closing arguments, the prosecutor must limit his or her statements to the facts in evidence and legitimate inferences from those facts. *Commonwealth v. Leymeister*, 285 Pa.Super.Ct. 539, 428 A.2d 176 (1981). Where the remarks of the prosecutor so prejudice the jury as to prevent a fair trial, reversible error exists. *Commonwealth v. Leymeister, supra; Commonwealth v. Van Cliff, supra.*

Our examination of the contested statements does not reveal, however, that the prosecutor stated any personal opinion regarding the guilt of appellant or of the credibility of the complainant. These excerpts under review contain, rather legitimate arguments and reasonable inferences of the prosecutor based upon the facts in evidence.

■ Our system of jurisprudence not only relies but rests upon the notion that the scales of justice are evenly balanced and each party, not only the defendant but also the Commonwealth, must be afforded an equal opportunity to tip the scales. It, therefore, follows that the Commonwealth is entitled to a full measure of oral advocacy and the prosecutor has not only the privilege but the duty to exert his skills as an advocate in such manner as he deems the most likely to be persuasive. There is no sound reason why counsel for the Commonwealth should be expected to show any less fervor than counsel for the defendant during any portion of the trial, including the closing remarks, provided, of course, the statements do not fall afoul of the ABA Prosecution Standards. The trial court is the best monitor of the propriety of the remarks of counsel for the Commonwealth during argument and the appellate courts must be more than hesitant to disturb a determination of the trial court regarding propriety since the quiet, studied solemnity of the appellate court is a world apart from the charged atmosphere of the trial courtroom. Therefore, only such remarks as clearly and obviously violate the ABA Prosecu-

tion Standards may be determined to be improper. The remarks under review do not so violate and were not improper.

Judgment of sentence affirmed.

WIEAND, J., files a concurring opinion.

WIEAND, Judge, concurring:

I concur that appellant is not entitled to a new trial. In so doing, I agree fully with the majority's disposition of appellant's contention that the prosecution deprived him of due process by "concealing or destroying possibly exculpatory evidence." However, I am unable to agree when the majority says the prosecutor's statements (1) that the alleged victim's "testimony is worthy of belief;" (2) "she was telling you the truth as honestly as she could;" and (3) "I want you to understand, by golly, she is telling you the truth" were not expressions of opinion. In my judgment they were exactly that. They can be excused, however, as relatively mild responses to a highly improper and inflammatory argument by defense counsel. This argument included counsel's opinion that the alleged victim was a "liar," that she was a "perjurer" and that her testimony was, inter alia, "a cock and bull story," "ridiculous," "bunk," "balogna," "nonsense," "made up," "bull," and "preposterous." In view of defense counsel's highly charged and improper, emotional tirade against the veracity of the prosecution witness, the District Attorney cannot be condemned for protesting that her testimony was "worthy of belief" and that "she was telling you the truth as honestly as she could." Certainly, such responses do not require that appellant be awarded a new trial. See: *Commonwealth v. Brown,* 490 Pa. 560, 417 A.2d 181 (1980); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975); ABA Project on the Standards for Criminal Justice, Standards Relating to the Prosecution Function § 5.8 (Approved Draft, March, 1971) (commentary: prosecutor may be justified in making a reply to an argument by defense counsel which may not have been proper if made without provocation). See generally: *Commonwealth v. Rigler,* 488 Pa. 441, 412 A.2d 846 (1980); *Commonwealth v.*

380

*Kjersgaard,* 276 Pa.Superior Ct. 368, 419 A.2d 502 (1980); *Commonwealth v. Baynes,* 269 Pa.Superior Ct. 563, 410 A.2d 845 (1979).

For these reasons, I concur in the result achieved by the majority but do not join its opinion.