J. S33003/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KELVIN MONTERO, | : | No. 452 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, September 10, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0000977-2012

BEFORE:  FORD ELLIOTT, P.J.E. DONOHUE AND LAZARUS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:           **FILED JULY 08, 2015**

Kelvin Montero appeals from the judgment of sentence entered on September 10, 2013 in the Court of Common Pleas of Philadelphia County. The sole claim presented on appeal concerns whether the prosecutor committed misconduct during the Commonwealth's closing argument. No relief is due.

Saul Rodriguez and his companion stopped appellant from physically abusing his girlfriend at the Puerto Rican Day Parade at 5th and Cambria Streets. Appellant and his cohort, John Perez, fought with Rodriguez and then left the area, returning several hours later with a loaded semi-automatic weapon. After failing to find Rodriguez, appellant opened fire into the street in several directions; approximately 30 shots were fired. Jesus Rivera, a 16-year-old bystander, was struck by two errant bullets and

died of gunshot wounds. The defense presented alibi testimony averring that appellant was at his girlfriend's home at the time of the shooting. Following a jury trial, appellant was convicted of conspiracy to commit murder.[1] Appellant was sentenced to a period of incarceration of 18 to 40 years. Appellant filed a timely post-sentence motion, which was denied on January 14, 2014. On February 8, 2014 this appeal was filed.

Again, appellant argues that the trial court erred by denying his request for a mistrial based on prosecutorial misconduct. (Appellant's brief at 4.) He claims that the prosecution's repeated comments during closing argument that the alibi witnesses were lying created a fixed bias with the jury.

In its Rule 1925(a) opinion, the trial court finds appellant's claim concerning the use of the term "lying" to be waived for failing to specify this ground as a basis of his motion for a mistrial. The trial court explains that the defense request for a mistrial identified the basis for the motion as the prosecutor's alleged expression of "personal opinion." (**See** notes of testimony, 7/19/13 at 105.) During the motion for the mistrial, defense counsel subsequently referenced the "objections that you sustained"; but

---

[1] The jury failed to reach verdicts as to the charges of first degree murder, carrying a firearm without a license, and possessing an instrument of crime; thus, the Honorable M. Teresa Sarmina declared a mistrial as to those charges. A second trial resulted in convictions as to all three crimes. Appellant's separate appeal from those judgments of sentence are pending before this court at No. 1452 EDA 2014.

again, did not specifically identify "lying" as an additional ground for the motion. As the Commonwealth notes, "[i]t was instead [The Honorable M. Teresa Sarmina] who referred to 'lying' when differentiating the 'sustained' objections from the remarks supposedly based on 'personal opinion' that were advanced as the ground for the motion." (Commonwealth's brief at 9, citing notes of testimony, 7/19/13 at 89, 91, 95, 106.) We agree that this issue could be found waived for failing to explicitly identify lying as a basis for the mistrial motion.

In any event, if we were to address appellant's challenge, he would not be entitled to relief. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, it is our determination that there is no merit to the question raised on appeal. We determine that Judge Sarmina ably and comprehensively disposes of appellant's claims in her Rule 1925(a) opinion; thus, we will adopt it as our own and affirm on that basis. (**See** trial court opinion, 5/7/14 at 5-11.)

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015

- 3 -

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

COMMONWEALTH

FILED

CP-51-CR-0000977-2012

v.

MAY 0 7 2014.

Superior Court No.
452 EDA 2014

KELVIN MONTERO Criminal Appeals Unit
First Judicial District of PA

Sarmina, J.
May 7, 2014

OPINION

PROCEDURAL HISTORY

On July 22, 2013, following a jury trial, Kelvin Montero (the defendant) was found guilty of

conspiracy to commit murder (F-1).[1] Sentencing was deferred until September 10, 2013, on which

date this Court sentenced the defendant to a term of not less than 18 years nor more than 40 years

imprisonment. On September 17, 2013, post-sentence motions were filed, which were denied by

this Court on January 14, 2014. On February 8, 2014, a timely notice of appeal was filed.

FACTS

After searching for a man with whom he had fought earlier in the day[2] and failing to find

him, on September 26, 2011, the defendant opened fire at the corner of 5th and Cambria Streets,

shooting approximately 30 shots down the street. Notes of Testimony (N.T.) 7/16/2013 at 150-

152. A 16-year-old boy, Jesus Rivera (Jesus), was struck by two of defendant's errant shots and died

from the gunshot wounds. Id. at 154; N.T. 7/17/2013 at 23.

---

[1] 18 Pa.C.S. § 903. The defendant had been charged with four crimes: murder, conspiracy to commit murder, firearms not to be carried without a license, and possessing instruments of crime (PIC). Notes of Testimony (N.T.) 7/22/2013 at 52. The jury could not reach a verdict with respect to three of the four charges – murder, firearms not to be carried without a license and PIC – and a mistrial was declared as to those. Id. The defendant was re-tried for those three crimes in December 2013, and was convicted of all three. N.T. 12/20/2013 at 43-44. Post sentence motions were denied as to those charges on April 23, 2014.

[2] The fight had occurred on September 25, 2011 at the Puerto Rican Day Parade. N.T. 7/16/2013 at 200-201. The festivities had carried on past midnight, into the 26th, when this shooting took place. Id. at 150-152.

At approximately 8:30 PM the previous evening, the defendant found his girlfriend, Cynthia Vasquez (Vasquez), seated in a car at the corner of 5th and Cambria Streets. N.T. 7/16/2013 at 200-201; N.T. 7/17/2013 at 132. The defendant forcibly removed Vasquez from the car, walked her down the street, pushed her head into a gate, and slapped her in the face. N.T. 7/16/2013 at 201-202; N.T. 7/17/2013 at 132-133. Angel Ducvo (Ducvo)[3] and Saul Rodriguez (Rodriguez) saw the defendant strike Vasquez and came to her defense.[4] N.T. 7/16/2013 at 202; N.T. 7/17/2013 at 133. A fight broke out between the defendant and Ducvo. N.T. 7/16/2013 at 204. Eventually, the police broke up the fight, and the defendant and Vasquez retreated to Vasquez's mother's car. N.T. 7/17/2013 at 133.

At some point thereafter, the defendant exited the car. As the defendant walked away, Rodriguez approached the car and spoke with the girls therein. Id. at 134. Upon seeing Rodriguez speaking with the girls, the defendant became angry, returned to the car, and punched Rodriguez. Id. at 134-135. The defendant then ran away, mounted a bike, and rode off. Id. at 136. Rodriguez pursued the defendant. During the chase, John Perez (Perez)[5] arrived on the scene in a red truck, exited the vehicle, and confronted Rodriguez, who abandoned his pursuit. Id.

Later that night, around 12:00 AM, the defendant and Perez returned to 5th and Cambria Streets wearing black hoodies, looking for Rodriguez and his friends. N.T. 7/16/2013 at 207; N.T. 7/17/2013 at 142. One of the people with whom the defendant spoke, Angel Figueroa, testified

---

[3] Angel Ducvo's nickname is "Abo." N.T. 7/16/2013 at 203.

[4] Rodriguez provided a statement about this encounter to Detective Joseph Bamberski. When Rodriguez was called to testify, he recanted his prior statement. N.T. 7/17/2013 at 122-125. Rodriguez confirmed that he signed and adopted his prior statement. Id. Accordingly, Rodriguez's account of the events of September 25, 2011 was admitted for its truth pursuant to Commonwealth v. Brady, 71 A.2d 34, 36 (Pa.Super. 1987) (Brady); Commonwealth v. Lively, 703 A.2d 467 (Pa.Super. 1997) (Lively), and their progeny.

[5] Perez was initially charged as a co-defendant. Prior to jury selection, on July 15, 2013, Perez entered a negotiated guilty plea to murder of the third degree (F-1), criminal conspiracy (F-1), and persons not to possess firearms (F-2). 18 Pa.C.S. §§ 2502(c), 903, and 6105(a)(1), respectively; N.T. 7/15/2013 at 26. Per the negotiations, this Court sentenced Perez to an aggregate term of not less than 22-and-a-half years nor more than 45 years imprisonment. N.T. 7/15/2013 at 30.

that while the defendant was searching for Rodriguez, he was reaching to his waist as if to indicate that he possessed a gun. N.T. 7/16/2013 at 208. After speaking with Figueroa, the defendant[6] opened fire, shooting 30 times in all directions.[7] Id. at 95, 150. Keyshla Rivera (Keyshla) testified that the defendant was "shooting all crazy like everywhere and bullets was going everywhere." Id. at 150. Keyshla and her 16-year-old brother, Jesus, tried to run for cover. Id. at 155-56. But before Jesus could get to safety, he was struck by two bullets, one to the right side of his torso and another to his right arm, and fell to the ground.[8] Id. at 154; N.T. 7/17/2013 at 25-27.

The search for the defendant commenced on September 28, 2011, after an arrest warrant had been issued. N.T. 7/17/2013 at 95-97. On November 1, 2011, Detective Burke found the defendant on the second floor of a home in the Hunting Park neighborhood of Philadelphia. Id. at 103-04.

LEGAL ANALYSIS

The defendant raises the following issues on appeal:[9]

1. The verdict was against the weight of the evidence.

---

[6] Keyshla Rivera, Jesus's sister, identified the defendant as the shooter. N.T. 7/16/2013 at 168. Ducvo identified the defendant as the shooter pursuant to a photo array compiled by the police. N.T. 7/17/2013 at 196-97. During the shooting, Ducvo did not actually see the shooter's face, but he was able to recognize the defendant as the shooter based on their earlier encounter, wherein the two had engaged in the fistfight. N.T. 7/16/2013 at 204; N.T. 7/17/2013 at 195-197. Ducvo's prior statement was also admitted for its truth pursuant to Brady/Lively.

[7] At the crime scene, 30 fired cartridge casings (FCCs) were found. At 12:40 AM Officer Brian Waters responded to a call on 5th and Cambria Streets to look for a burgundy Ford F-150 pickup truck. N.T. 7/16/2013 at 110. Officer Waters stopped the truck, which was being driven by Perez. Id. at 112-116. The Ford pick-up was taken in to the police station as evidence. N.T. 7/17/2013 at 71. A later search of the truck revealed a Glock 9MM handgun on the right side of the front dashboard. Id. at 79. The search also uncovered court documents with Perez's and the defendant's names. Additionally, two handgun magazines were found: one empty 30-round magazine and another full 15-round magazine. Id. at 80; N.T. 7/18/2013 at 115-116. Officer Lawrence Flagler, a ballistics expert, determined that all 30 FCC's were fired from the 9mm handgun found in that truck. N.T. 7/17/2013 at 242.

[8] Associate Medical Examiner, Dr. Aaron Rosen, testified that one of the bullets penetrated the right side of Jesus's body below his armpit. This bullet passed through the thoracic cavity and Jesus's right lung, causing internal bleeding. Dr. Rosen stated that the other bullet was retrieved in the upper right arm and fractured Jesus's humerus. N.T. 7/17/2013 at 25-27. The cause of death was determined to be the gunshot wounds. Id. at 24.

[9] For ease of disposition, this Court has rephrased the issues raised in the defendant's Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) (1925(b) Statement).

2. The evidence was insufficient to sustain a conviction for criminal conspiracy to commit murder.

3. The trial court erred by refusing to grant the defendant's motion for a mistrial.[10]

## Weight of the Evidence

The defendant's first claim is that the verdict as to the charge of conspiracy to commit murder was against the weight of the evidence. For the reasons set forth below, this claim has been waived.

When raising a claim that the verdict is against the weight of the evidence, a defendant bears the burden to specify why or how the verdict is against the weight of the evidence. Commonwealth v. Seibert, 799 A.2d 54, 62 (Pa.Super 2002). In Seibert, the defendant's 1925(b) Statement stated, "The verdict of the jury was against the weight of the credible evidence as to all the charges." Id. The Superior Court found that the defendant's weight of the evidence claim was "too vague to permit review". Id. at 62.

In the case *sub judice*, the defendant's 1925(b) Statement reads, "The verdict was against the weight of the evidence as to the charge of criminal conspiracy to commit murder." As in Siebert, here, the defendant provides this Court with no justification as to why or how the verdict was against the weight of the evidence. As the defendant's weight of the evidence claim is "too vague to permit review," his claim has been waived.

---

[10] In his 1925(b) Statement, the defendant claims that this Court erred by refusing to grant the defendant's motion for arrest of judgment, as the verdict was the result of prosecutorial misconduct, "wherein the prosecutor said, in spite of the Court sustaining defense objection, at least seven (7) times that the alibi witnesses where [sic] lying. (See 7-19-13 N.T., p. 77, 88, 93, 95)." 1925(b) Statement, 3/4/2014, at 1-2. There are two issues with this claim of error. First, defense counsel made a motion for a mistrial, not a motion for arrest of judgment. N.T. 7/19/2013 at 105. In fact, a motion for arrest of judgment would be an improper vehicle to raise a claim of prosecutorial misconduct. No judgment had yet been entered so none could be arrested. The appropriate mechanism to challenge prosecutorial misconduct is through a motion for mistrial. See Pa.R.Crim.P. 605(B) ("When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial"). Second, defense counsel's motion for a mistrial was not based on the prosecutor's repeated contention that alibi witnesses were lying "in spite of the Court sustaining defense objection." Defense counsel specified that he moved for a mistrial because of "repeated expressions of personal – the prosecutor's personal opinion". N.T. 7/19/2013 at 105. The defendant's claim that the prosecutor ignored sustained objections has been waived. See Commonwealth v. Duffy, 832 A.2d 1132, 1136 (Pa.Super. 2003)("[A]n Appellant may not raise a new theory for an objection made at trial on his appeal."). This Court will address the claim of prosecutorial misconduct that was preserved at trial: that the prosecutor improperly inserted her personal opinion into her closing argument.

4

*Sufficiency of the Evidence*

The defendant's second claim is that the evidence was not sufficient to sustain a verdict for conspiracy to commit murder. This claim has also been waived.

When reviewing a sufficiency claim, the court must "examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as verdict winner, support the jury's finding of all elements of the offense beyond a reasonable doubt." Commonwealth v. Montalvo, 598 A.2d 926, 932 (Pa.Super. 2008). However, a sufficiency of the evidence claim is waived if the 1925(b) Statement fails "to specify the element or elements upon which the evidence was insufficient." Commonwealth v. Williams, 958 A.2d 1252, 1257 (Pa.Super. 2008).

In the present case, the defendant stated only that "the evidence was insufficient to support the verdict of guilty as to the charge of criminal conspiracy to commit murder." The defendant makes no assertions as to why the evidence was insufficient, nor does he point to any element that the prosecution failed to prove. Therefore, due to lack of specificity in his 1925(b) Statement, the defendant's sufficiency claim is waived.

*Prosecutorial Misconduct*

The defendant's final claim is that this Court erred by denying defense counsel's motion for mistrial on the grounds that the prosecutor committed prosecutorial misconduct. After the prosecutor's closing argument, defense counsel moved for a mistrial because of "repeated expressions of personal – the prosecutor's personal opinion." N.T. 7/19/2013 at 105-06. This Court correctly denied defense counsel's motion, as the prosecutor did not proffer an improper personal opinion and, furthermore, the prosecutor's comments did not deprive the defendant of a fair and impartial trial.

A trial court is vested with discretion to grant a mistrial when an allegedly prejudicial event "may be reasonably said to deprive the defendant of a fair and impartial trial." Commonwealth v. Judy, 978 A.2d 1015, 1019 (Pa.Super. 2009). When determining whether a mistrial should be granted, a trial court must (a) analyze whether misconduct actually occurred, and (b) assess the degree of resulting prejudice. Id.

A prosecutor's expression of his or her personal opinion during summation constitutes misconduct. Judy, 978 A.2d at 1020. It is well settled that a prosecutor's closing argument must be based on the facts introduced at trial and the "legitimate inferences" therefrom. Commonwealth v. Stafford, 749 A.2d 489, 498-99 (Pa.Super. 2000). In Stafford, the prosecutor prefaced a number of statements about the evidence introduced at trial with, "I think" or "We think." Id. The prosecutor there made the following remarks:

> "I don't think that the fact that we didn't find greenhouses supports the proposition that Mr. Walburn was trying to set anyone up and I think the evidence suggests – [Objection]." At another point, he argued "I don't think there's any evidence that makes any paint cans or odor of paint or anything significant here . . . [Objection]." At a third point, the prosecutor argued "we think that he possessed that controlled substance there with intent to manufacture, based – [Objection]."

Id. at 498 n.8.

The Stafford Court held that the prosecutor's use of "I think" and "We think" was not improper, as the prosecutor was "not attempting to express his personal belief as to the evidence," but rather was intending to "'urge the jury to make a fair inference from the facts adduced at trial.'" Id. at 499, quoting Commonwealth v. Martin, 416 A.2d 1102, 1104 (Pa.Super. 1979). Stafford relied on Commonwealth v. Gunderman, in which the Superior Court similarly analyzed a prosecutor's use of "I think," and found that preface to be permissible where the subsequent inference was based on the evidence introduced at trial. 407 A.2d 870, 873 (Pa.Super. 1979). In closing, the prosecutor had stated:

6

Who has a greater interest, other than Mr. Gunderman, in the results of this case? I submit to you that it is his wife. She also tells us that he was with her from two o'clock in the morning or two o'clock in the afternoon until morning. **I think she began to see just how difficult that might be to believe when she said 'I don't mean twenty-four hours a day, though.'** Again, does she mean from the first day of her pregnancy or that she knew she was pregnant? Did he become such a concerned father-to-be that at that point, he began spending every solid day with her? Test her interest. Test her testimony and her demeanor on the stand.

Id. (emphasis added).

The Gunderman Court found that the prosecutor's statement about Mr. Gunderman's wife's credibility was a proper inference based on the evidence before the jury. The prosecutor pointed out that Mr. Gunderman's wife originally made a statement suggesting that she and her husband were together for a significant period of time; she later retreated from that statement, noting that she was not with her husband 'twenty-four hours a day.' Based on that, the prosecutor argued that Mr. Gunderman's wife had realized she sounded incredible, and tailored her testimony accordingly. "The prosecutor did not argue that the jury should find appellant guilty simply because the prosecutor believed appellant to be guilty; rather, the prosecutor argued an inference based upon the evidence. This type of argument is permissible." Id.

In situations where a prosecutor has, in fact, made an improper statement, a trial court must still evaluate the prejudice exacted by the misconduct in order to decide whether to grant a mistrial. Assessing the degree of prejudice requires evaluating a prosecutor's statements in context. Commonwealth v. Ragland, 991 A.2d 336, 341 (Pa.Super. 2010). Each isolated comment should not be viewed in a vacuum; even where a prosecutor's statement "exceed[s] the acceptable bounds and standards" and "overstep[s] the acceptable balance of the principles of summation," that statement will not warrant a mistrial unless its unavoidable effect is to render the jury incapable of weighing the evidence objectively and reaching a true verdict. Commonwealth v. Harris, 979 A.2d 387, 398-99 (Pa.Super. 2009). A mistrial is an extreme remedy that will only be granted "when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal."

7

Commonwealth v. Johnson, 719 A.2d 778, 787 (Pa.Super. 1998); see also Commonwealth v. Chmiel, 889A.2d 501, 542 (Pa. 2005) ("[P]rosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict.").

In the case *sub judice*, defense counsel moved for a mistrial on the grounds that the prosecutor improperly asserted her personal opinion. As noted below, because the prosecutor made permissible inferences rooted in evidence, her comments did not constitute misconduct.

At trial, the defendant called his former girlfriend, Vasquez, and her mother, Jeanette Bobe (Bobe), as alibi witnesses. N.T. 7/18/2013 at 170, 300. Vasquez, who was only 16 years old at the time of the shooting, was living with Bobe at 3420 A Street in Philadelphia. Id. at 206. Vasquez testified that, on the night of the shooting, the defendant slept beside her in her mother's house for the entire night. Id. at 177. The prosecutor impeached Vasquez with a prior statement that she had given to police on January 25, 2012: Vasquez had told police that the defendant drove his car from her house on the night of the shooting and that she did not see him again until the next day. Id. at 197-200.

At trial, Bobe also claimed that the defendant was present inside the A Street residence on the night of the murder. Bobe testified that she slept on the sofa inside the home and would have known if the defendant had left. Id. at 309. On cross-examination, the prosecutor introduced evidence of Bobe's close relationship with the defendant: Bobe had received money from the defendant in the past to pay for gas; on July 27, 2011, after his arrest on an unrelated charge, Bobe posted bail for the defendant – $510 – to get him out of jail. Id. at 325-33. Bobe also permitted the defendant to sleep overnight in the same room with her underage daughter. N.T. 7/18/2013 at 325-33.

8

The prosecutor commented on the credibility of both women, suggesting that their testimony at trial was not believable because of their respective relationships with the defendant.

ADA DONNELLY: Ladies and gentlemen, it's the evidence that all points to this defendant from the witnesses who were at that scene. And guess what, if all these witnesses see this defendant come back now all tough because he's got that gun, guess where he can't be? With his girlfriend and her mom back at their house at 3420 A Street, okay. So somebody is lying. Who do you think is lying?

These witnesses either the day of within hours or within a couple of days went down and told everything that they knew. And again, Angel Ducvo, you can't get around this, he knows him, it's not a stranger. And even the other people, they recognize the defendant from the earlier fight, the whole motive of the incident.

So who is lying? Them or the people that have a motive to lie, his girlfriend and the girlfriend's mom who don't want to see him get in trouble, who never gave a statement to the detectives about this alleged alibi –

MR. TURNER: Objection, Your Honor.

THE COURT: Sustained.

ADA DONNELLY: – who got on the stand and sounded scripted. Ladies and gentlemen, human nature has to come into this when you're evaluating these witnesses, human nature and common sense. Cynthia Vasquez when she got up there, she didn't turn to you and say, ladies and gentlemen, listen, I'm telling you, he was with me, he was there. **I don't even think she wanted to be up there.** It was pretty clear who was running the show here, and that was her mom.

THE COURT: Don't express your personal opinions, Ms. Donnelly.

MR. TURNER: Objection.

ADA DONNELLY: When you saw her mom testify, can you tell that there's something else going on here? Do you think it's unusual that this mom bails out her 16-year-old daughter's boyfriend from prison?

MR. TURNER: Objection, Your Honor.

THE COURT: Overruled.

ADA DONNELLY: Do you think that it's unusual that two months after she bails out her 16-year-old daughter's boyfriend she's allowing him to come to her house and sleep in her daughter's bed? Someone whose husband got killed nine months earlier who is a drug dealer? Someone who she admits that her husband is associates with John Perez, the getaway driver in this case? A mother who admits that this defendant gives her money sometimes for gas? Do you see what's going on here? This is about money and maybe something else.

MR. TURNER: Objection

THE COURT: Overruled

ADA DONNELLY: There's a weird connection there with mom with this defendant. When this defendant is slapping around her daughter at the Puerto Rican Day Parade and her daughter is saying I don't want to talk to him, why is she getting involved and making her daughter sit in the back of the car and talk to this defendant? Why are you doing that, mom? Why are you involved in what a 16-year-old wants to do with her boyfriend or not? Why did you bail him out and is encouraging and enforcing [sic] your daughter to be with him? If you guys are alibi, why are you lawyering up and not talking to the police?

MR. TURNER: Objection.

9

THE COURT: Sustained.

ADA DONNELLY: If all you are is alibi, when the police constantly come and want to talk to you, why not just tell them what you know?

MR. TURNER: Objection.

THE COURT: Overruled.

ADA DONNELLY: Pretty obvious why. The defendant wasn't there the whole night. It happened the way Cynthia [Vasquez] told Detective Bamberski in her statement. It happened the way she admitted on that stand partially, that the defendant was angry at her, he got jealous, he got enraged, Cynthia's sister had to grab the defendant by the arm and pull him aside to calm him down. The defendant gets into a fight with those guys and now Cynthia wants to grab him and calm him down.

N.T. 7/19/2013 at 87-91 (emphasis added).

Out of an abundance of caution, this Court interjected, prior to any objection from defense counsel, and directed the prosecutor not to express her personal opinion. Nevertheless, according to the case law discussed *supra*, her comment, "I don't even think she wanted to be up there," was not an improper personal opinion. The evidence introduced at trial demonstrated that Vasquez's mother, Bobe, had a curious relationship with the defendant. The defendant provided Bobe with money when she needed it, and Bobe provided a service for the defendant – bailing him out of jail – when he needed it. Additionally, the evidence demonstrated that Bobe exerted some degree of control over Vasquez's relationship with the defendant; the defendant was able to sleep overnight with the teenage Vasquez, as Bobe had granted them permission. The prosecutor's comment about Vasquez's demeanor on the witness stand – that she did not want "to be up there" – was an attempt to tie this evidence together, suggesting that Bobe was controlling Vasquez as a way to continue her mutually beneficial relationship with the defendant. This comment about Vasquez's credibility was drawn from the evidence produced at trial. As in Gunderman, the fact that the prosecutor prefaced this inference with a first-person expression did not render it an improper personal opinion.

Furthermore, even if the prosecutor's comment was improper, it was one isolated statement in her closing argument and did not deprive the defendant of his right to a fair and impartial tribunal. Stating that a witness appears as though she does not want to be on the witness stand does

10

not create "fixed bias" in the minds of a jury.[11] The fact that Vasquez might have been reluctant to testify because of her mother's influence does not color the defendant in a negative light. This statement only addressed the credibility of these two alibi witnesses; it was not an inflammatory attack on the defendant. The prosecutor's comment did not have the unavoidable effect of prejudicing the defendant. A mistrial is an extreme remedy which was not required here. This Court did not err by denying the defendant's motion for a mistrial.

Accordingly, the judgment of sentence should be affirmed.

BY THE COURT:

M. TERESA SARMINA                    J.

---

[11] Prior to the summations, this Court instructed the jury that closing arguments were not evidence and that the jury was not bound by counsel's perspectives on the evidence. N.T. 7/19/2013 at 44-45.