## Commonwealth, Appellant, *v.* Miller et al., Appellants.

512

Argued March 20, 1964.   Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Lawrence Goldberg,* with him *Samuel R. Liever,* for defendants.

*W. Richard Eshelman,* District Attorney, with him *Ralph J. Althouse,* Assistant District Attorney, for Commonwealth.

OPINION BY MONTGOMERY, J., June 11, 1964:

The defendants were tried jointly before a jury and found guilty on two indictments charging (1) conspiracy to commit robbery and robbery by assault and force; and (2) kidnapping for extortion. Thereafter the lower court granted a motion in arrest of judgment filed by Frank S. Townsend, Jr., which is the basis of the appeal by the Commonwealth, and refused motions for a new trial and in arrest of judgment filed by the other defendants. These appeals by John Miller, Robert J. Sykes, and James R. Porter alias John Mc-Donough, and Frank S. Townsend, Sr. (now deceased), are from the refusal of their motions and the judgments of sentence.

A resume of the facts out of which the charges arose follows. On September 15, 1962, about 10:00 a.m., Frank Donato, now deceased, while walking with his dog on a street in the City of Reading was accosted, roughly searched, handcuffed, and placed in a station wagon by four men whom he could not identify. A fifth man remained in the station wagon. A cloth was placed around Donato's throat, and inquiry was made of him in a threatening manner about $30,000, and something metallic was placed against his head. At this time some mention was made by the man asking the question about the books Donato left in his room, which Donato later admitted were there. Eventually Donato was let out in the hills near the Borough of Sinking Spring, where the handcuffs were removed and he was tied to a tree, a T-shirt that he had been wearing was put around his head, and $54 in currency and his keys were removed from his person. He remained in this position until he was able to extricate himself, following which he reached a phone and called the police.

Upon the arrival of the police Donato accompanied them to Sinking Spring, where they came upon a sta-

tion wagon in which were two men, Frank S. Townsend, Sr. and Robert J. Sykes, whom he later identified at a preliminary hearing following their arrest as two of the five men who had accosted him previously.

When Donato was first observed by the police officer who had responded to his call he was holding some twine. The officer later found twine in the station wagon.

Other events of the evening were as follows: About 11:00 p.m. Jennie Donato, a spinster sister of Frank Donato, was in the living room of the home occupied by her and her brother at 29 South Second Street. She heard someone at the front door, opened it, and found two men there. One of these men wore a glove and, holding up some keys, said, "Frank said you should give me the money. . . . that the Federal men found here," and "Well, you see we have his keys and if you don't want anything to happen to him you better give us the money." While they were talking the police arrived and the two men, identified as James R. Porter alias John McDonough, and John Miller were taken into custody. Porter broke away and ran down the street but was promptly apprehended. It was Porter who had done most of the talking to Miss Donato. One of the two men said to the police officer, "May I go down and turn my car off? I left it running." While taking Porter and Miller to the police station in the patrol wagon they came upon a car parked on a nearby street with Frank S. Townsend, Jr., its owner, sitting behind the steering wheel. He was taken into custody. Eventually the five defendants, Townsend, Sr., Townsend, Jr., Sykes, Miller, and Porter, were brought to the police station.

Later the same night Miss Donato found back of a hassock in the living room $54 in currency which had not been there earlier that evening. One of the two men who had come to her door that evening had entered the living room on the arrival of the police.

A glove was found in the patrol wagon but it was not identified as being identical or similar to the one worn by one of the two men who had come to the Donato home.

Considering first the appeals of the defendants, their first assignment of error concerns the admission into evidence, over their objection, of stenographic notes of the testimony of Frank Donato given before a city alderman at a preliminary hearing afforded defendants following their arrest. Subsequent to this hearing and before trial Frank Donato had been shot on the streets of Reading and died as a result thereof.

Although the Act of May 23, 1887, P. L. 158, §3, 19 P.S. 582, refers to testimony given in a criminal proceeding before a court of record, the common law rule permitting such evidence to be given where the proceeding has been before a committing magistrate has not been abrogated by the Act of 1887. *Commonwealth v. Ryhal,* 274 Pa. 401, 118 A. 358 (1922); *Commonwealth v. Cleary,* 148 Pa. 26, 30 W.N.C. 1, 23 A. 1110 (1892); *Commonwealth v. Keck,* 148 Pa. 639, 24 A. 161 (1892); *McLain v. Commonwealth,* 99 Pa. 86 (1882); *Brown v. The Commonwealth,* 73 Pa. 321 (1873); *Commonwealth v. Bone,* 64 Pa. Superior Ct. 44 (1916). Counsel for the defendants would have us overrule these cases and adhere strictly to the statute; however, in light of the ruling of the Supreme Court in the *Ryhal* case, which discussed *Commonwealth v. Cleary,* wherein the Act of 1887 was under discussion, this argument cannot be considered by this Court since we are bound by the ruling of the Supreme Court.

In this connection we consider the other argument, to the effect that the death of Frank Donato was not properly proved, to be frivolous. The question of the sufficiency of the preliminary proof as to the absence of a witness is largely within the discretion of the trial judge. *Katz v. Montague,* 181 Pa. Superior Ct. 476, 124 A. 2d 506 (1956).

Counsel for the defendants complain further that it was error to read into the record at trial the entire record made at the alderman's hearing, including the questions asked by the district attorney. Aside from the fact that the answers given by Donato might be unintelligible if unaccompanied by the questions put to him, the common law rule and the Act of 1887, P. L. 158, 19 P.S. §582, refer to "notes of the examination" and are not limited to the words of the absent witness. If there had been anything objectionable or inadmissible in the notes, a proper objection to that part or parts would have brought the matter to the court's attention for a ruling. In the absence of any assignment of error relating to particular objections, it may be presumed that no objections were made or if made were properly overruled.

Defendants' next contention is that the court erred in permitting the aforesaid testimony of Donato to be read in violation of their constitutional rights under the Sixth and Fourteenth Amendments to the Constitution of the United States since they had no opportunity to confront the witness. However, defendants did have that opportunity at the preliminary hearing, where they were represented by counsel, who cross-examined Donato at that time. The general rule in such cases is that there is no violation of constitutional rights. *State v. Jordan,* 83 Ariz. 248, 320 P. 2d 446 (1958), cert. denied, *Jordan v. State of Arizona,* 78 S. Ct. 1364, 357 U.S. 922, 2 L. Ed. 2d 1367, rehearing denied, 79 S. Ct. 17; *People v. Terry,* 180 C.A. 2d 48, 4 Cal. Rptr. 597 (1960), cert. denied, 81 S. Ct. 458, 364 U.S. 941, 5 L. Ed. 2d 372; *Davis v. State,* 171 Neb. 333, 106 N.W. 2d 490 (1960), cert. denied, 81 S. Ct. 458, 364 U.S. 941, 5 L. Ed. 2d 372.

Defendant's next assignment of error is based on the serious charge that the district attorney knowingly suppressed evidence of an important nature, i.e., the

analyses of the twine with which Donato had been bound and that found in the station wagon occupied by Townsend, Sr. and Sykes, when it was found in the Borough of Sinking Spring, showed them to be different. Both samples of twine were offered in evidence during the trial (Ex. 1 and Ex. 3); however nothing was asked by the district attorney of any witness, nor was there offered the report of the State Police Laboratory, which showed that the two samples of twine or rope differed in the number of strands and the diameter size—one of them being 115 strands and measuring 1.6 mm. in diameter; and the other, 145 strands and measuring 2.0 mm. in diameter. Furthermore, in his closing address the district attorney referred to the two pieces of twine as follows: "there [referring to the station wagon stopped by the State Police] they found this twine; there they found more of the *same similar twine*. That is Exhibit No. 3. You will take it along out with you, too." (Emphasis supplied) Although the trial judge recognized that a new trial would have been mandatory "Had he [district attorney] said Exhibit 3 was the same as Exhibit 2 . . ." he considered the statement of the district attorney as "equivocal" and justified his refusal of a new trial because of his charge to the jury on this point, viz.:

"You remember the argument of counsel as to whether or not it was the same type and kind. You will remember the argument of counsel as to whether there should have been an expert called. (This reference was of course to defense counsel, as defense counsel made the only argument as to the calling of an expert, as the jury well knew having just heard defense counsel speak.) All of these things are for your consideration. These are all part of the whole case and arguments of counsel I told you in the beginning were part of the whole case, but the arguments of counsel are not evidence".

We do not agree with the trial judge and adopt as our judgment in the matter the reasoning and conclusion expressed by President Judge HESS in his concurring and dissenting opinion:

"Exhibits 1 and 3, the controversial pieces of twine or rope, were submitted to the jury for one purpose—to permit the jury to consider whether the pieces were alike or came from a common source. If the jury was satisfied that the exhibits were identical, a strong circumstance was established against the defendants which added great weight to the testimony of identification. If in fact the exhibits were not from the same piece of twine, the finding of Exhibit 3 in the black station wagon in which two of the defendants were apprehended was of little value in connecting them with the crime. The prosecuting attorney knew, at least before the case was submitted to the jury, that the exhibits in no way matched because it is conceded that they had been submitted to the State Police Crime Laboratory for analysis, and an opinion had been rendered to the effect that the exhibits were different in number of strands and diameter. It is my opinion that in withholding this information from the trial judge and jury and in allowing the jury to infer a fact which was contrary to the known and established actual facts, the Commonwealth suppressed evidence and violated the right of the defendants to receive a fair and impartial trial. They may be completely guilty, but the constitution requires that their guilt or innocence be established only after a trial that is fair and just under the law and the constitution.

"It is no answer for the Commonwealth to argue that defense counsel could have asked the witnesses whether a test had been conducted on the exhibits. No defense lawyer worthy of his position in the profession would consider asking that question of a witness on cross-examination and thereby run the risk of develop-

ing affirmative answers that would readily seal the doom of his client. The trial judge fairly and accurately covered the relevancy of Exhibits 1 and 3 in the charge, but the charge, in my opinion, could not correct the unfairness of the situation in which the suppression of evidence placed the defendants.

"The Commonwealth seeks no victims, only justice: Commonwealth v. Williams, 309 Pa. 529. The Circuit Court of the United States, in United States ex rel. Almeida v. Baldi et al., 195 F. 2d 815, concluded that failure of the district attorney to reveal that the fatal bullet came from the revolver of a policeman and not from the gun of the defendant constituted suppression of evidence which violated due process. I reach a similar conclusion on the facts of this case."

Having concluded that a new trial shall be awarded to the appellant-defendants, we shall not consider their other assignments of error but shall direct our attention to the appeal of the Commonwealth from the judgment in arrest of judgment entered in favor of Frank S. Townsend, Jr. We have reviewed the evidence and considered the inferences urged by the district attorney arising therefrom but conclude, as did the court below, that there is not sufficient evidence to identify this defendant with the crimes charged in the indictments. The appeal of the Commonwealth will be dismissed.

The appeals at 61 to 68, inclusive, October Term, 1964, of John Miller, Robert J. Sykes, Frank S. Townsend, Sr., and James R. Porter are sustained, the judgments of sentence against them reversed and new trials awarded on all indictments.

The appeals at 108 and 109 October Term, 1964, of the Commonwealth in the case of Frank S. Townsend, Jr. are dismissed and the order of the lower court granting motions in arrest of the judgment is affirmed.

WRIGHT and WOODSIDE, JJ., would affirm in all appeals on the opinion of the lower court.