372 A.2d 788
**COMMONWEALTH of Pennsylvania**
v.
**Leo WALLOE, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1975.

Decided April 28, 1977.

474

Richard F. Furia, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Benjamin H. Levintow, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## ORDER

PER CURIAM:

The Court being equally divided, the judgment of sentence is affirmed.

POMEROY, J., files an Opinion in Support of Affirmance, joined by EAGEN, C. J., and O'BRIEN, J. MANDERINO, J., files an Opinion in Support of Reversal, joined by ROBERTS and NIX, JJ.

JONES, former C. J., did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

POMEROY, Justice.

The opinion in support of reversal, *infra*, would grant a new trial in this case because the trial judge refused to allow defense counsel to introduce at appellant's second

trial testimony given by a missing witness, Charles Anderson, at appellant's first trial. In my view, the trial court did not abuse its discretion in ruling as it did, and I would affirm the judgment of sentence.

■■ The statute governing the admission of the testimony of a witness given at a prior trial reads in relevant part as follows: "Whenever any person has been examined as a witness . . . for the defense, in any criminal proceeding . . ., if such witness afterwards . . . cannot be found, . . . notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue . . .." Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582. "A witness 'cannot be found' " within the meaning of the above-quoted Act, however, "only if a good-faith effort to locate the witness and compel his attendance at trial has failed." *Commonwealth v. Blair*, 460 Pa. 31, 34, 331 A.2d 213, 214 (1975). The burden of demonstrating such a "good-faith effort" is on the party seeking to introduce the prior testimony, *Commonwealth v. Blair, supra*, and "[t]he question of the sufficiency of the preliminary proof as to the absence of a witness is largely within the discretion of the trial judge." *Commonwealth v. Miller*, 203 Pa.Super. 511, 516, 201 A.2d 256, 259 (1964), quoted in *Commonwealth v. Jackson*, 463 Pa. 301, 305, 344 A.2d 842, 844 (1975). Accord, *Commonwealth v. Beach*, 445 Pa. 257, 261, 284 A.2d 792, 794 (1971). Thus, the question here is whether the trial court abused its discretion in ruling that appellant had failed to present sufficient evidence to prove that Charles Anderson was unavailable to testify.

■ The opinion in support of reversal relies upon *Commonwealth v. Jackson, supra*, to support its conclusion that the efforts to locate the missing witness were sufficient to establish the "good-faith" requirement of the Act. In my view, *Jackson* does not dictate the result

which Mr. Justice MANDERINO would reach in the instant case. In *Jackson*, the trial court admitted the prior testimony into evidence, and this Court merely held that the lower court's ruling, under the facts there presented, did not constitute an abuse of discretion. *Jackson, supra*, 463 Pa. at 306, 344 A.2d at 844. Simply because in *Jackson* we held that the trial judge did not abuse his discretion in allowing the prior testimony does not mean that in another case, involving facts which *may* indicate an equally diligent effort to locate a witness, the trial judge automatically abuses his discretion by refusing to allow the prior testimony to be admitted. Whether or not there is an abuse of discretion is an issue which must be determined on the basis of the facts and circumstances of each case.

■■ Even if, however, our decision in *Jackson* be deemed to represent a minimum threshold of effort required to establish the present unavailability of a prior witness, I am not convinced that the efforts exerted in the case at bar to locate Anderson were, as the opinion in support of reversal puts it, *post* at 794, "obviously more extensive" than those in *Jackson*. In *Jackson*, the Commonwealth's proof of unavailability consisted of subpoenaing the missing witness without response, a single phone call to him and a statement from the witness' grandmother that the witness was a frequent runaway. In upholding the trial judge's determination that this evidence was sufficient, we noted that "[t]he trial court could reasonably conclude that any search would be futile." *Jackson, supra* at 306 n. 2, 344 A.2d at 844 n. 2. In the present case, in contrast, the only facts which appear are that defense counsel subpoenaed a witness who failed to appear on the day he was scheduled to testify. Defense counsel requested a continuance which was denied,[1] but at the same time the trial judge offered to

1. As an alternative ground in support of his request for a new trial, appellant contends that the trial court abused its discretion

have a bench warrant issued for the witness. This invitation was declined by defense counsel,[2] whereupon the court ruled that the witness could be put on the stand "at any time before the speeches to the jury." Since rebuttal witnesses remained to be called, the defense, as it turned out, in effect was given four days within which to secure the attendance of the witness. During this time period defense counsel twice attempted to make contact with Anderson by telephone. Both times he was told that the witness was out of town and his whereabouts unknown. At no time during these four days, however, did counsel inform or attempt to inform the court that he was having difficulty in locating the witness. Under these circumstances I am simply unable to conclude that the trial court abused its discretion when it ruled that Anderson was not "unavailable" and, therefore, refused to allow his prior testimony to be introduced into evidence.

If it be assumed, *arguendo*, that the opinion in support of reversal is correct in declaring that the trial court

in refusing this motion for a continuance. As will be observed in the text, however, despite the trial court's formal denial of the motion, appellant in fact received a four day continuance. Thus if any error was committed in this regard, it was clearly harmless.

2. Mr. Justice MANDERINO in the opinion supporting reversal argues that defense counsel's action in declining to have the warrant issued at this time was justified since he "could reasonably have believed that a warrant was unnecessary to produce the witness and could reasonably have declined to have it issue in order to avoid unnecessarily antagonizing his own witness." (Opinion in Support of Reversal, *post* at 793). With respect, I consider this analysis specious. First, it is highly questionable whether any antagonism engendered by issuing a warrant would have been significant. Anderson was not a voluntary witness but had to be subpoenaed. Second, even if Anderson might have been antagonized by the warrant, it does not follow that he would have refused to testify or that his testimony would have been any less effective and forthright. While counsel may have felt that he could secure Anderson's presence without the aid of the court, such a decision, in my view, must be considered a calculated gamble which failed; counsel should not later be heard to complain of judicial error when the result complained of was due in large measure to his own unsuccessful tactics.

erred in the disputed ruling, I am satisfied that the error was harmless beyond a reasonable doubt.

In this case, the evidence of appellant's guilt was strong. In addition to substantial circumstantial evidence, the victim, Mr. Goldsleger, unequivocally identified appellant as one of his assailants at the preliminary hearing and at both trials. As the Commonwealth points out, "[t]he opportunity for identification was ample. The store was well lighted; the robbers were in the store before they announced the holdup 10 minutes, possibly longer . . . ; Goldsleger first spoke with them in front of the meat case, face to face." Appellee's Brief at 4. In addition, Goldsleger testified that it was Leo Walloe who pistol-whipped him, thereby giving the witness further opportunity to identify Walloe as his assailant.

At the second trial, Mr. Goldsleger was questioned by defense counsel concerning Anderson's visit to Goldsleger's store and his attempted impersonation of appellant. Goldsleger's responses to these questions clearly show that he was not misled by Anderson's ruse. Furthermore, Anderson's testimony at the first trial relative to this encounter with Goldsleger was of minimal substance and importance; Anderson never testified that Mr. Goldsleger addressed him as Leo Walloe. Finally, the questioning of Goldsleger itself indicates that the substance of Anderson's testimony at the earlier trial was put before the jury.

For all of the foregoing reasons, I would affirm the judgment of sentence.

EAGEN, C. J., and O'BRIEN, J., join in this opinion in support of affirmance.

## OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

On December 9, 1970, appellant, Leo Walloe, was arrested and charged with carrying a concealed deadly

weapon, unlawfully carrying a firearm without a license, aggravated assault and battery, and aggravated robbery. Motions to suppress certain physical evidence were denied, and appellant was brought to trial before a jury. At the close of the prosecution's case, the trial judge sustained appellant's demurrer to the weapons charge. The trial ended in a mistrial because of the jury's inability to reach a verdict.

Represented by new court-appointed counsel, appellant's retrial began on April 13, 1973. Appellant was found guilty by a jury on all charges (except that which had been dismissed in appellant's first trial). Post-verdict motions were denied, and appellant was sentenced to imprisonment on the aggravated robbery charge for ten to twenty years, sentence to run consecutively with another sentence appellant was then serving for an unrelated offense. On appeal, the Superior Court affirmed the judgment of sentence in a per curiam, opinionless order. *Commonwealth v. Walloe*, 229 Pa.Super. 747, 322 A.2d 375 (1974). On March 3, 1975, we granted appellant's petition for allowance of appeal limited to two questions: (1) whether the trial court properly ruled on appellant's motion for continuance until a certain witness could be located, or alternatively, (2) whether the trial court properly denied appellant's request to introduce into evidence the notes of testimony of this witness, who had testified at appellant's first trial, and who, it was alleged, was unavailable at the second trial.

The facts relevant to these questions are as follows. At appellant's first trial, one Charles Anderson testified to the effect that the complainant—the victim of the robbery—had, subsequent to appellant's arrest, mistaken him, Charles Anderson, for appellant. Anderson was asked:

"Q. What happened when you went into [complainant's] store?

A.   When I walked into the store [complainant] and one man and a lady was in the store.  I told [complainant] that I was accused of robbing [complainant's] store and my name is Leo Walloe and I want to make restitution to pay the money back.

Q.   What was [complainant's] reaction?

A.   He asked me are you one of the kids that robbed my store and I said yes, so he told me that I had   .   .   .   he told me that I had to talk to his lawyer in court.

Q.   Did [complainant] carry on any other conversation with you?

A.   Yes, he asked me where was my brother.

Q.   Meaning where was Bernard Walloe (a co-defendant)?

A.   Yes.

Q.   Did he say anything else to you?

A.   No, after he told me he would see me in court with his lawyer, I left."

At both trials, the complainant referred to in the above testimony identified appellant as one of the perpetrators of the robbery of his store on December 9, 1970, the incident resulting in the instant charges against appellant.

At appellant's second trial, it was learned that Charles Anderson had not appeared to testify, even though he had been subpoenaed to do so by appellant's trial counsel. This revelation came from defense counsel on Thursday, April 19, 1973, eight days after jury selection had commenced, and six days after commencement of the taking of testimony.  At that time defense counsel stated to the trial judge that Charles Anderson was not present; that he had been subpoenaed; that defense counsel had been informed that the witness had been present earlier, "out in the hall waiting to testify"; that the witness had left a message at counsel's office that he was "rushing his daughter to the hospital"; and that counsel was now un-

able to reach the witness. Defense counsel requested a continuance. After further discussion, the trial court indicated that, if requested, an attachment would be issued for the missing witness. Defense counsel declined this suggestion. The trial court then stated that, since rebuttal witnesses were still to be called, the witness could be put on the stand at "any time before the speeches to the jury."

Four days later, Monday, April 23, 1973, counsel were ready to deliver their summations to the jury; however, the witness had still not been produced. Defense counsel stated to the trial court that he was informed that "Mr. Anderson is out of town," and that his previous statement to the court that the witness had to take his sick daughter to the hospital was not true, defense counsel having been misinformed by someone at Anderson's residence. Defense counsel then requested that he be permitted to read into the record the testimony given by Anderson at appellant's first trial. This motion was refused.

I agree with appellant that a new trial is required because of the refusal of the trial judge to allow defense counsel to introduce the testimony given by the missing witness at appellant's first trial. The substance of this testimony has already been stated.

The Act of May 23, 1887, P.L. 158, § 3, (19 P.S. § 582) states:

"Whenever any person has been examined as a witness, either for the commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards die, or be out of the jurisdiction so that he cannot be effectively served with a subpoena, or *if he cannot be found,* or if he become incompetent to testify for any legally sufficient reason

properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue; . . .." (Emphasis added.)

Before a witness " . . . cannot be found" within the meaning of the Act, however, the party attempting to introduce the prior testimony must demonstrate that " . . . a good-faith effort to locate the witness and compel his attendance at trial has failed." *Commonwealth v. Jackson,* 463 Pa. 301, 305, 344 A.2d 842, 844 (1975) ; *see also Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). In *Jackson,* a majority of this Court concluded that the prosecution had made such a good faith effort. That conclusion was based upon the following factual situation.

"Here, the absent witness was living at St. Michael's School for Boys near Scranton, Pa. When notified by the District Attorney's office that he would be called as a witness, his grandmother contacted the school authorities who released the boy into her custody. He arrived at her home in Philadelphia the evening before trial. As the grandmother was preparing to leave for court the next morning, the child disappeared. When the grandmother could not find him, she came to court alone and informed the District Attorney of the boy's disappearance. A subsequent phone check to the grandmother's home went unanswered. To establish unavailability, the Commonwealth called the grandmother who, in addition to the facts outlined above, testified that the child had a history as a runaway."

The prosecution's efforts to locate the missing witness in *Jackson* were ruled adequate by the majority because the prosecution showed that it " . . . had initiated the witness' transfer from Scranton to Philadelphia [and had] presented evidence that the child mysteriously disappeared shortly before trial and that he had run away 'many times.' " *Id.,* 463 Pa. at 305, 344 A.2d at 844.

Defense counsel in the instant case had subpoenaed the missing witness, the witness had appeared at trial on Monday, April 16, 1973, and was ready to testify. The prosecution argues that appellant has no right to object at this stage because at the time the witness was first discovered missing, defense counsel declined the court's suggestion that a bench warrant issue. At that point, however, defense counsel had no reason to disbelieve the explanation that had been given to him concerning the missing witness' whereabouts. Counsel stated to the court that a telephone call to the witness' home had revealed that the witness was taking his sick daughter to the hospital. That version of the witness' activities came on Thursday, April 19, 1973. Defense counsel could reasonably have believed that a warrant was unnecessary to produce the witness and could reasonably have declined to have it issue in order to avoid unnecessarily antagonizing his own witness. On Monday, April 23, 1973, counsel informed the court that the witness still remained absent, and that counsel's efforts to locate him over the weekend had revealed that the earlier version of his whereabouts had been fabricated by someone at the witness' home.

The efforts made to locate the missing witness in the instant case were thus obviously more extensive than those held sufficient to satisfy the "good-faith" requirements of the Act in *Jackson, supra.* There the prosecution's proof of unavailability rested solely on one phone call and the statement of the witness' grandmother that the witness was a frequent runaway. Furthermore, in the instant case, unlike *Jackson*, there are no countervailing Sixth Amendment considerations which might operate against the use, at a second trial, of testimony taken at a prior hearing. The prior testimony, therefore, should have been admitted.

Lastly, the prosecution argues that even if it were error to deny the defense request to introduce the prior

testimony of the missing witness, such error was harmless. I cannot conclude that the omission of the evidence was error beyond a reasonable doubt. The complainant in this case was the only eyewitness to the crime for which appellant was accused. That testimony placed appellant at the store at the time of the robbery. The testimony of the missing witness tended to weaken the complainant's contention that he recognized appellant as one of the perpetrators of the crime charged. The jury was entitled to have this evidence of the complainant's alleged misidentification before it when called upon to decide whether or not the complainant's identification of appellant was accurate.

Judgment of sentence should be reversed and a new trial granted.

ROBERTS and NIX, JJ., join in this opinion in support of reversal.