458 A.2d 190

**COMMONWEALTH of Pennsylvania**

v.

**Matthew CONNORS, Appellant.**

Superior Court of Pennsylvania.

Argued March 1, 1982.

Filed Feb. 11, 1983.

Reargument Denied April 26, 1983.

Petition for Allowance of Appeal Denied Oct. 13, 1983.

554

Perry Paul deMarco, Philadelphia, for appellant.

Eric Beller, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, BECK and HOFFMAN, JJ.

WIEAND, Judge:

Matthew Connors was tried by jury and found guilty of murder in the first degree and rape.  Post verdict motions were denied, and appellant was sentenced to life imprisonment for murder and a consecutive term of ten to twenty years for rape.  On direct appeal, he contends that the trial court erred when it (1) received in evidence, over objection,

four photographs of the body of the eleven year old victim and (2) when it refused to allow prior testimony of a defense witness to be read to the jury. He also contends that the prosecuting attorney was guilty of misconduct which deprived him of a fair trial. We find no merit in these contentions and, therefore, affirm the judgment of sentence.

The opinion of the learned trial judge includes the following recitation of the manner in which the crime was discovered. "On Monday, August 21, 1978, at 7:30 A.M. Ms. Darlene Snipes was exiting her eighteenth floor apartment at the Fairhill Project on her way to work. In following her usual routine, she peered down the fire escape stairwell to check for intruders before she left her apartment. As she did, she noticed a black male, later identified as the defendant, lying on his back between the seventeenth and eighteenth floors. Ms. Snipes related that the defendant's shirt was bloody in the chest area and he appeared to be sleeping. Alarmed by his presence, Ms. Snipes hurriedly locked her door and proceeded to work where she promptly notified police of the suspicious nature of the defendant's presence.

"Police Officer Francis O'Connor of the 22nd District was dispatched to the Project where he arrived at 8:25 A.M. and was escorted by maintenance men to the stairwell in question. Upon arrival, Officer O'Connor, along with his partner, Officer Morton Spiser, observed the body of a young Negro female lying on the stairwell who appeared to be dead. The officers secured the scene and summoned the Assistant Medical Examiner for the City of Philadelphia, Dr. Halbert Fillinger. Dr. Fillinger arrived at 10:30 A.M. and pronounced the victim, Corinthia Fields, dead. It was later determined that Ms. Fields' death was the result of one hundred ninety-six stab wounds in and around the chest and abdomen. The eleven year old victim had also been raped."

The Commonwealth's evidence established that appellant had taken Corinthia Fields to his apartment on the eigh-

teenth floor between 3:30 A.M. and 7:30 A.M., where he raped her. Thereafter, he took her to the firetower stairwell and, on the landing between the seventeenth and eighteenth floors, killed her by repeated stabbings with an ice pick.

Later the same day, at or about 11:00 A.M., the janitor found a discarded ice pick in the incinerator of the building. It had human blood on it. It had not been there on the prior day.

Testifying on his own behalf, appellant stated that at the time of the rape and killing he had been in bed with Mrs. Laura Creer at her home, located a half-hour walk from appellant's apartment. She testified, however, that appellant had left her home at 3:00 A.M. She did not see him again until 9:00 A.M. She also identified the ice pick found in the incinerator as similar to one that was missing from her home on the day of the killing.

The Commonwealth's pathologist, upon making an external examination of the victim's body, had made a preliminary diagnosis of death by shotgun blast. It was not until August 25 that he concluded that death had been caused by 193–196 thrusts of a sharp, thin instrument similar to an ice pick. The first public reference had been to a shotgun blast; the first media reference to death by stabbing did not appear until August 26. Appellant was arrested on August 23, when he acknowledged having heard that Corinthia Fields "had been shot, stabbed and that she is pregnant."

Appellant's first trial ended in a mistrial. A second trial produced convictions. Appellant does not dispute the sufficiency of the Commonwealth's evidence but contends that trial errors require a new trial.

■ The four photographs complained of by appellant were black and white and were properly received. They were relevant to the Commonwealth's case and clearly non-inflammatory. Three of them portrayed the fully clothed body of Corinthia Fields in the position in which it was found in the stairwell. These photos also tended to

rebut, by virtue of the child's position as shown thereon, appellant's contention that it was the child and not he whom Darlene Snipes had seen when she left for work on August 21. The fourth photograph portrayed the chest area of the victim and demonstrated the markings made by the death producing wounds. The photograph had been taken after the child's chest area had been cleaned and blood had been removed. It was relevant not only to show the cause of death but to explain the confusion in the initial diagnosis.

■ The admission of photographs is a matter within the sound discretion of the trial judge, whose ruling will not be reversed unless there has been an abuse of that discretion. *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978); *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Kaster*, 300 Pa.Super. 174, 446 A.2d 286 (1982); *Commonwealth v. Parks*, 281 Pa.Super. 38, 421 A.2d 1135 (1980). There was no abuse of discretion in the instant case. The photographs were neither gruesome nor inflammatory. See, e.g., *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980); *Commonwealth v. Woodward, supra; Commonwealth v. Hilton*, 461 Pa. 93, 334 A.2d 648 (1975); *Commonwealth v. Petrakovich, supra.*

■ Ms. Irma Epps had testified at appellant's first trial. However, she failed to appear at the second trial. Appellant asked the court to declare her unavailable and to admit her prior testimony pursuant to Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 5917. This statute provides:

Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a sub-

sequent trial of the same criminal issue. For the purpose of contradicting a witness the testimony given by him in another or in a former proceeding may be orally proved.

It is a reenactment of the Act of May 23, 1887, P.L. 158, No. 9, § 3, 19 P.S. § 582, which in the past has frequently been interpreted by the courts of this state. The seminal question is whether the witness cannot be found. Writing in support of affirmance in *Commonwealth v. Walloe*, 472 Pa. 473, 372 A.2d 788 (1977), Justice Pomeroy stated:

A witness "cannot be found" within the meaning of the above-quoted Act, however, "only if a good-faith effort to locate the witness and compel his attendance at trial has failed." *Commonwealth v. Blair*, 460 Pa. 31, 34, 331 A.2d 213, 214 (1975). The burden of demonstrating such a "good-faith effort" is on the party seeking to introduce the prior testimony, *Commonwealth v. Blair, supra*, and "[t]he question of the sufficiency of the preliminary proof as to the absence of a witness is largely within the discretion of the trial judge." *Commonwealth v. Miller*, 203 Pa.Super. 511, 516, 201 A.2d 256, 259 (1964), quoted in *Commonwealth v. Jackson*, 463 Pa. 301, 305, 344 A.2d 842, 844 (1975). Accord, *Commonwealth v. Beach*, 445 Pa. 257, 261, 284 A.2d 792, 794 (1971). Thus, the question here is whether the trial court abused its discretion in ruling that appellant had failed to present sufficient evidence to prove that [the witness] was unavailable to testify.

*Id.*, 472 Pa. at 476, 372 A.2d at 790. See generally: Anno., 3 ALR 4th 87, Sufficiency of Efforts to Procure Missing Witness' Attendance to Justify Admission of His Former Testimony—State Cases. We look, then, to the circumstances surrounding Ms. Epps' failure to appear.

On March 3, 1980, when trial commenced, defense counsel already knew that he intended to call Irma Epps as a witness, for a subpoena had been served on her on March 1. It directed her to appear on March 10. When she failed to appear, counsel placed two telephone calls to her on the same day and learned that the witness did not intend to

appear because she was in fear for her safety and that of her children. Counsel did not inform the court of her refusal to attend, however, but caused the witness to be served with a second subpoena on March 11. Again, she failed to appear. Then, on March 12, counsel informed the court of his conversations with Ms. Epps and requested a bench warrant. The judge issued the warrant somewhat reluctantly, observing that counsel could have expedited the trial by informing the court of the witness's refusal on March 10. Two continuances were granted. However, Ms. Epps still had not appeared when the case was ready to go to the jury on March 14. At that time the court made a finding that Ms. Epps had not been "unavailable" under the provisions of 42 Pa.C.S. § 5917 and refused to admit her prior testimony.

The trial court did not abuse its discretion. Ms. Epps had, in fact, been found by the process servers and by defense counsel. Compare: *Commonwealth v. Blair, supra* (witness "not found" when subpoena went unserved, calls to her home were not answered, and search of her home verified her absence). She had not only been found, but she was available. Counsel waited until late in the trial, two days after he had determined that the witness was refusing to appear, before requesting the issuance of a bench warrant. In *Commonwealth v. Walloe, supra,* counsel refused an offer for the issuance of a bench warrant during an earlier stage of the trial and chose less drastic means to achieve attendance. There was no abuse of discretion in the court's later determination that the witness was available. In the instant case, the defense failed to establish that the witness was "unavailable"; it demonstrated, rather, that the witness had been available but that counsel delayed too long the "drastic steps" which would have compelled her attendance. The trial court did not abuse its discretion when it refused to allow her prior testimony to be read to the jury. See: *Commonwealth v. Faison,* 452 Pa. 137, 305 A.2d 44 (1973) (error to admit prior testimony where witness's unavailability was not shown;

there had been no attempt to compel attendance, only unsuccessful phone calls).

■ Moreover, Ms. Epps' testimony was irrelevant, and the refusal to permit it to be read to the jury was harmless. Her testimony at the prior trial had been that she recovered an ice pick from a fire which had occurred at Laura Creer's house on November 17, 1978, almost three months after the killing of Corinthia Fields. The ice pick was not more specifically identified and was not shown to have any connection whatsoever to the crimes for which appellant was being tried. The finding of an ice pick in or near the home of the Commonwealth's witness, Laura Creer, almost three months later was too tenuous to permit a logical inference that she was mistaken or false in testifying that her ice pick was missing on August 21, the date of the killing. Cf. *Commonwealth v. Yount*, 455 Pa. 303, 316, 314 A.2d 242, 249 (1974); *Commonwealth v. Klick*, 272 Pa.Super. 61, 65, 414 A.2d 669, 671 (1979).

■ Appellant's contention that he was deprived of a fair trial because of prosecutorial misconduct consists of three parts, which we consider seriatim. Gladys Christian, a woman who had been living with appellant at his apartment until she left on August 18, testified as a Commonwealth witness that she had made up the bed before leaving and that there were then no blood stains on the sheets. The prosecutor's use of the words "fierce arguments" in connection with questions pertaining to Ms. Christian's reason for leaving was not prejudicial. There were no suggestions that appellant had been responsible for the arguments and no intimation of violence or criminal activity of any kind. Furthermore, as the trial court observed, as a result of a preceding sidebar conference, "the prosecutor took specific precautions to prevent the eliciting of any prejudicial testimony, by prefacing his question with an instruction to Ms. Christian not to reveal what happened during the course of the alluded to argument." There was no error in the trial court's ruling on the prosecutor's question.

■ The second area of alleged prosecutorial misconduct pertains to questions propounded to Darlene Snipes, the Commonwealth witness who had observed appellant in the stairwell. The assistant district attorney asked her on *redirect* examination whether the residents of the Fairhill Project had been upset about the child's murder. Appellant contends that the intent of the question was to prejudice him. The question, however, had another purpose. Defense counsel had attempted to show by cross-examination of the witness that her neighbors had been nervous and upset because of a lack of security in the building. He argued that security was so lax that anyone could have entered the stairwell and killed Corinthia Fields. The question asked by the prosecutor was intended to rebut the implication created by defense counsel's cross-examination by shifting the basis for neighborhood concern. It referred only to the time after the killing and did not permit an inference that the neighbors had been afraid of appellant prior to the death of Corinthia Fields. Further pursuit of this line of questioning, moreover, was precluded by the trial court's ruling.

Appellant's last contention is that prejudicial and improper comments were made by the prosecuting attorney during closing argument. The standard for testing a prosecutor's comments was set forth in *Commonwealth v. Baranyai*, 296 Pa.Super. 342, 346, 442 A.2d 800, 802 (1982) as follows: "The Supreme Court has made clear '... that the prosecuting attorney enjoys an office of unusual responsibility, and that his trial conduct should never be vindictive or attempt in any manner to influence the jury by arousing their prejudices.' *Commonwealth v. Potter*, 445 Pa. 284, 287, 285 A.2d 492, 494 (1971); *Commonwealth v. Toney*, 439 Pa. 173, 180, 266 A.2d 732, 736 (1970)." However, not every intemperate or improper remark by the prosecutor requires a new trial. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 426 A.2d 1111 (1981); *Commonwealth v. Jarvis*, 482 Pa. 598, 394 A.2d 483 (1978); *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Williams*,

564

295 Pa.Super. 369, 441 A.2d 1277 (1982); *Commonwealth v. Smith*, 289 Pa.Super. 356, 433 A.2d 489 (1981); *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 427 A.2d 1356 (1981). Before a new trial is required, the language must be such that its "unavoidable effect ... would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Mikesell*, 475 Pa. 589, 595, 381 A.2d 430, 433 (1977); *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975); *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968); *Commonwealth v. Baranyai, supra*, 296 Pa.Super. at 346, 442 A.2d at 802; *Commonwealth v. Williams, supra*, 295 Pa.Super. at 376, 441 A.2d at 1281; *Commonwealth v. Youngkin, supra*, 285 Pa.Super. at 430, 427 A.2d at 1362.

The comments complained of by appellant in the instant case were well within the bounds of proper advocacy and did not have the effect of causing a fixed bias or hostility on the part of the jury. The first averment of misconduct is a statement that a verdict of not guilty would acquit appellant and render the Commonwealth powerless to retry him. When placed in context, it is apparent that this remark was entirely innocuous. It was spoken during the prosecutor's admittedly correct explanation of the jury's role in the criminal justice system and was not an impassioned plea to convict. Similarly, there is no prejudice apparent in the prosecutor's statement that he observed the area of the crime and concluded that the crime was a vicious one. This comment was not only supported by the evidence but conceded by defense counsel. Having been directed against the crime and not against appellant, it is difficult to perceive the impropriety thereof or that any prejudice could have been caused thereby.

Finally, appellant argues that a rhetorical question asking why Darlene Snipes would "put a charge of murder on this man, knowing this defendant and knowing a lot of things about this defendant?" was improper. We disagree.

The statement did not imply that the prosecutor had evidence remaining undisclosed which suggested prior misconduct by appellant. When taken in context it is apparent that the intent of the comment was to ask the jury why the witness, a neighbor of appellant, should identify him as the person seen in the stairwell unless she were certain. In view of the importance of her testimony to the Commonwealth's case, the comment was not inappropriate.

The judgment of sentence is affirmed.

HOFFMAN, J., files a dissenting opinion.

HOFFMAN, Judge, dissenting:

The admissibility of photographs of a corpse in a homicide case is a matter within the discretion of the trial court. *Commonwealth v. Edwards,* 493 Pa. 281, 289, 426 A.2d 550, 554 (1981); *Commonwealth v. Schroth,* 479 Pa. 485, 488, 388 A.2d 1034, 1036 (1978) (collecting cases). "To determine whether such photographs are admissible, we have utilized a two-tier analysis. The trial judge must initially decide whether the photographs possess inflammatory characteristics." *Commonwealth v. Hudson,* 489 Pa. 620, 630, 414 A.2d 1381, 1386 (1980). *See Commonwealth v. Schroth, supra,* 479 Pa. at 489, 388 A.2d at 1037; *Commonwealth v. Hubbard,* 472 Pa. 259, 280, 372 A.2d 687, 697 (1977). Then, if "the photographs possess gruesome or inflammatory qualities likely to inflame the passions of the viewer, our cases require the application of the 'essential evidentiary value' balancing test," *Commonwealth v. Schroth, supra* 479 Pa. at 489, 388 A.2d at 1037, *i.e.,* "whether the photographs are of such essential evidentiary value that their need clearly outweighs the liklihood of their inflaming the passions of the jurors." *Commonwealth v. Hudson, supra* 489 Pa. at 630, 414 A.2d at 1386. *See Commonwealth v. Robinson,* 273 Pa.Superior Ct. 337, 417 A.2d 677 (1979). Because I believe the photographs admitted in this matter are inflammatory and of nominal evidentiary value, I would hold that the lower court erred in admitting them.

566

Commonwealth Exhibit # 2 (C–2) is a 10½" × 13½" black and white photograph depicting the naked chest of the 11 year old victim, ravaged by 193 stab wounds. Although the wounds have been cleaned, the upper chest, where most of the wounds are found, remains stained with dried blood. I cannot agree with the majority that this picture is without "inflammatory characteristics." *See Commonwealth v. Hudson, supra.* The mutilated chest of an 11 year old child, whether the wounds have been cleaned or not, certainly possesses sufficient inflammatory characteristics as to likely inflame the passions of the viewer and thus requires us to determine whether it was of "such essential evidentiary value" that the need for it clearly outweighed the likelihood of its inflaming the passions of the jury. The majority finds that the photo was relevant to show the cause of death and the initial confusion of the coroner as to the cause of death. Although the photo may be arguably relevant for those purposes, the Commonwealth has utterly failed to show that the need for the photo outweighed the prejudice to appellant. The medical examiner testified to the exact nature of the wounds and the cause of death. Although he stated that he initially believed the wounds to have been from a shotgun because of their quantity, further examination revealed that they were stab or puncture wounds. Appellant never contested the cause of death, but rather posited an alibi defense. As in *Commonwealth v. Chacko,* 480 Pa. 504, 391 A.2d 999 (1978), "[t]here is no indication that the photograph[ ] [was] necessary to supplement the otherwise specific testimony of the [medical examiner]." 480 Pa. at 508, 391 A.2d at 1001. *See also Commonwealth v. Garrison,* 459 Pa. 664, 331 A.2d 186 (1975) (cause of death uncontested and injuries could be adequately described by pathologist); *Commonwealth v. Scaramuzzino,* 455 Pa. 378, 317 A.2d 225 (1974) (slides merely cumulative to testimony of pathologist); *Commonwealth v. Powell,* 428 Pa. 275, 241 A.2d 119 (1968) (pathologist could have testified without use of pictures). Thus, the picture was cumulative, at best, and certainly insufficient to rise to

the level of "essential." Accordingly, the lower court abused its discretion in permitting its introduction.

Similarly, the lower court's admission of Commonwealth Exhibits 4a and 4b (c–4a, c–4b) into evidence was an abuse of discretion. C–4a and C–4b are 9″ × 13″ black and white photographs presenting a full frontal view of the victim's corpse. The body, clad in bedroom slippers, cut-off shorts, and blood-soaked tee-shirt, is shown lying prostrate on the stairwell landing, with the upper torso bent at a 45 degree angle. The child's face, as well as several wounds to the stomach area not covered by the tee-shirt, are fully exposed and visible. It is beyond comprehension to me that the majority finds these pictures neither gruesome nor possessing inflammatory characteristics. The wounds, blood and face of the eleven year old victim are all clearly depicted, graphically illustrating the savage attack. More inflammatory characteristics are difficult to imagine. Because of the inflammatory nature of the pictures, we again must balance their essential evidentiary value with their likelihood of arousing the passions of the jury. The majority holds that the photos were admissible to show the position of the body, thereby rebutting appellant's contention that a witness had observed the child's body and not appellant lying on the steps prior to the incident. The exact position of the body was testified to by the police officer responding to the call. Moreover, Commonwealth Exhibit # 4c (C–4c) provided an eye-level view of the position of the body, thereby rebutting appellant's contention, without showing the victim's face, wounds, or bloody clothes. *See Commonwealth v. Schroth, supra.* (view of naked back of decedent without face, blood or wounds visible held not inflammatory). Thus, because these gruesome and inflammatory pictures amounted to nothing more than cumulative evidence * and should not have been admitted, I dissent.

* I note that during the course of deliberations, the jurors specifically asked for and were given C–2 and apparently were also given C–4a, b, and c. (N.T. March 14, 1980, at 991–93). It is clear from the jury's interest in these marginally relevant photos that their admission did,

, in fact, divert the jury's attention from its proper fact-finding function.