518 A.2d 307

**COMMONWEALTH of Pennsylvania**

v.

**Nathaniel WEST, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 1985.

Filed Nov. 12, 1986.

Thomas Bruno, II, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, POPOVICH and ROBERTS, JJ.

ROBERTS, Judge:

This is an appeal from a judgment of sentence for first-degree murder and related offenses. At closing argument, the prosecutor told the jury "if you acquit, (these defendants) go never to come back ..., never to have to answer again, (but) ... if you convict ... there are appeals and there may be reversals ...". Because this argument improperly urged upon the jury a bias in favor of conviction, appellant was denied his right to a fair trial. Accordingly, we vacate the judgment of sentence and remand for a new trial.[1]

1. Because of our disposition, we do not reach the other issues which appellant raises.

Appellant and his co-defendant, Derrick Simmons, were charged with homicide, conspiracy and possession of an instrument of a crime in the November, 1979 stabbing death of William Grant Johnson. Michele Williams, who was 14 years old when the stabbing occurred, testified for the Commonwealth that she watched from the front door of her house as across the street appellant, his co-defendant and possibly others, stabbed Johnson.[2] Appellant introduced the conflicting testimony of Allene Freeman, who said that she saw the victim, already stabbed, stagger from the corner of Ms. Williams' street to the front of her residence. Appellant also introduced two alibi witnesses, who testified that they were with appellant at his mother's funeral when the stabbing was alleged to have occurred.

During closing argument at their July, 1983 trial, the prosecutor told the jury

if you acquit both these gentlemen, they go never to come back, never to see this charge and never to have to answer again. This is final. If you convict them of first-degree murder or a lesser degree depending upon your own view and based on the evidence, of course, there are appeals and there may be reversals later on because of evidentiary problems....

The trial court immediately interrupted the prosecutor's closing, saying: "Excuse me, Mr. McGill (the prosecutor). I really do think that you ought to add that the implications of a verdict should play no role in their reaching a verdict." The court's remarks clearly were directed to the prosecutor, not to the jury.

After the prosecutor completed his closing argument, both defendants objected at side bar to his statement that their convictions could be reversed on appeal. The trial court agreed that the statement was improper, telling the prosecutor that "you can't tell them (the jury) that if you find these people not guilty, they are going to be set free,

---

2. This evidence, if believed by the jury, would be sufficient to sustain guilty verdicts against appellant.

which is what you said." It held, however, that its interruption cured whatever prejudice the remark caused.

The issue which these facts squarely present is the propriety of prosecutorial argument to the jury that an acquittal is final while its decision to convict may be reversed on appeal. Appellant contends that the argument "wrongly indicate(s) to the jurors that if they have any doubt, to find the defendants guilty so that an appellate court can dispose of the matter." The Commonwealth dismisses the remark as a "parenthetical reference to a defendant's right to appeal."

Our courts have consistently recognized the impropriety of a prosecutor's reference to the consequences of the jury's verdict. In *Commonwealth v. Floyd,* 506 Pa. 85, 94–95, 484 A.2d 365 (1984), the Supreme Court vacated a death sentence where the prosecutor commented upon the appellant's chances for parole if he was given a sentence of life imprisonment. *See also Commonwealth v. Aljoe,* 420 Pa. 198, 207–8, 216 A.2d 50 (1966), *Commonwealth v. Earnest,* 342 Pa. 544, 551, 21 A.2d 38 (1941). Similarly, in *Commonwealth v. Shaffer,* 224 Pa.Super. 564, 307 A.2d 394 (1973), this court granted a new trial where the prosecutor in a bastardy case told the jury that failure to convict would require either the taxpayers or the unemployed mother to support the child. *Cf. Commonwealth v. Cherry,* 474 Pa. 295, 378 A.2d 800 (1977), *Commonwealth v. Harvell,* 458 Pa. 406, 327 A.2d 27 (1974) (arguments which invite the jury to consider dangerous conditions on the streets divert the jury's inquiry away from a factual determination; hence, they are improper).[3]

Moreover, it is well settled that a prosecutor may comment only on the facts established at trial and legitimate inferences therefrom. *See Commonwealth v. Brown,* 489

---

**3.** *See also Trimble v. Merloe,* 413 Pa. 408, 197 A.2d 457 (1964) (lawyer's remark in closing argument barred by well-settled rule prohibiting comment about defendant's ownership of a policy of liability insurance). *Cf. Commonwealth v. Mulgrew,* 475 Pa. 271, 380 A.2d 349 (1977) (unfamiliarity with verdict of not guilty by reason of insanity justifies informing jury of the consequences of such a verdict).

Pa. 285, 298, 414 A.2d 70 (1980); *Commonwealth v. Revty,* 448 Pa. 512, 516, 295 A.2d 300 (1972). This rule is based on the prosecutor's responsibility to be both an objective administrator and a zealous advocate, *Revty, supra,* and on the defendant's constitutional right to a jury which determines culpability based solely on the evidence of record. *See Holbrook v. Flynn,* —— U.S. ——, ——, 106 S.Ct. 1340, 1344, 89 L.Ed.2d 525 (1986); *Commonwealth v. Bruno,* 466 Pa. 245, 262, 352 A.2d 40 (1976). Accordingly, "the prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, *or by making predictions of the consequences of the jury's verdict,*" ABA Standards for Criminal Justice, Standard 3–5.8(d) (1980) (emphasis added). The comment to ABA Standard 3–5.8(d) clearly contemplates a limit of prosecutorial remarks concerning the consequences of conviction. It provides that "references to the likelihood that other authorities, such as the governor or the appellate courts, will correct an erroneous conviction are impermissible efforts to lead the jury to shirk responsibility for its decision." *Accord Commonwealth v. Mills,* 350 Pa. 478, 487–88, 39 A.2d 572 (1944) (trial court's instructions regarding the possibility of parole "constitute an implied invitation to the jury to transfer to the Board of Pardons an unpleasant responsibility which it is the jury's sworn duty to discharge").

A prosecutor's argument to the jury that "if you acquit this defendant he goes never to have to answer again ... (but) if you convict there are appeals and there may be reversals" invites the jurors, as in *Mills,* to "shirk" their responsibility as factfinders, by urging that the easier course of action is to err on the side of conviction, because *only* conviction keeps the defendant in the criminal justice system. In effect, the prosecutor tells the jury that its deliberative process should include a bias for conviction, regardless of the facts. This argument is, of course, contrary to the constitutional rule that a guilty verdict must be supported by proof beyond a reasonable doubt. *See In Re*

*Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Commonwealth v. McNeil,* 461 Pa. 709, 715, 337 A.2d 840 (1975); *Commonwealth v. Bryant,* 341 Pa.Super. 123, 129, 491 A.2d 181 (1985). The essence of the prosecutor's argument is that even where the jury has a reasonable doubt, it should return a verdict of guilty to keep the defendant in the system. But *Winship* and its progeny, far from requiring conviction in such circumstances, mandate acquittal.

In this case, the likelihood is considerable that the prosecutor's argument urging a bias toward conviction infected the jury's deliberations. The evidence at trial was clearly disputed; even the eyewitnesses did not agree on the events about which they testified. The record also indicates that the jury deliberated three days before reaching a verdict. Moreover, the court merely suggested to the prosecutor that he amend his remarks, rather than directly instructing the jury to disregard them and to consider only the evidence developed during the trial. *See Commonwealth v. Bruno, supra* 466 Pa. at 263–64, 352 A.2d 40. Also, the court's statement concerned the consequences of verdicts generally and was not specifically addressed to the prosecutor's argument improperly urging the jury to convict. *Cf. Commonwealth v. Sargent,* 253 Pa.Super. 566, 573, 385 A.2d 484 (1978) (where prosecutor told jury that the defense attorneys are "paid to acquit their clients" and trial judge's instruction to jury dealt only with the comment that defense attorneys are paid, court's attempted curative instruction was generalized and abstract to the point of inaccuracy).[4]

The prosecutor's statement to the jury that its deliberations should be based on a bias for conviction clearly prejudiced this appellant.[5]

---

**4.** We do not hold that *sua sponte* interruption by a trial court is improper. Indeed, trial court action on its own motion is often required. See ABA Standards for Criminal Justice, Special Functions of the Trial Judge, standard 6–1.1(a) (1980). We only hold that this interruption was flawed, because it was neither addressed to the jury, nor specific enough to mitigate the prejudice of the prosecutor's argument.

**5.** The Commonwealth relies on *Commonwealth v. Connors,* 311 Pa.Super. 553, 563–64, 458 A.2d 190 (1983). There, a panel of this court

Judgment of sentence vacated. Reversed and remanded for new trial.[6]

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must dissent. This case is controlled by *Commonwealth v. Baker*, 511 Pa. 1, 511 A.2d 777 (1986). In an attempt to distinguish this case, the majority mischaracterizes its language by equating a recitation of the Common-

held that the unavoidable effect of a statement that "a verdict of not guilty would acquit appellant and render the Commonwealth powerless to retry him" was not to prejudice appellant, since the statement was not part of an "impassioned plea to convict," *id.* Unlike *Connors,* the prosecutor's argument here was part of an "impassioned plea to convict." It persuaded the jury with rhetoric ("never to come back, never to see this charge and never to have to answer again"), and it included, along with a reference to acquittal, a discussion of the appellate consequences of conviction. Clearly, the "unavoidable effect" of the prosecutor's argument was to fix an improper bias in favor of conviction in the minds of the jurors. *See Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669 (1974).

6. This opinion was originally filed on June 11, 1986. Twelve days later, our Supreme Court held that defense counsel's failure to object to a similar closing argument did not amount to ineffective assistance of counsel. See *Commonwealth v. Baker,* 511 Pa. 1, 16–19, 511 A.2d 777, 785–86 (Pa.1986). Cf. *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Baker, supra,* 511 Pa. 20–28, 511 A.2d 787–791 (prosecutor's statement during death penalty hearing, that defendant may appeal from jury's determination held improper). We have *sua sponte* reconsidered our decision in light of the Court's opinion in *Baker.* The *Baker* court recognized that the question of whether a prosecutor's misstatement is grounds for a new trial necessarily depends on the individual circumstances of each case. The Court said:

Even where the language of a prosecutor is "intemperate, uncalled for, and improper, a new trial is not required unless 'its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.'" *Commonwealth v. Burton,* 491 Pa. 13, 22, 417 A.2d 611, 615 (1980), *quoting, Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975).

In *Baker,* the Court was persuaded by facts which indicated that the prosecutor's statement was made in rebuttal to a statement by defense counsel during his closing. Moreover, the trial judge "clearly and succinctly" instructed the jury that statements by counsel could not be considered as evidence. Here, the comment was not made in rebuttal, nor can it fairly be said that the trial judge's statement to the prosecutor serves as a "clear and succinct" curative instruction.

wealth's position with the holding of the case. In *Baker*, 511 Pa. at 17, 511 A.2d at 785, the Court states that it is a *contention* of the Commonwealth that the prosecutor's comments were invited by defense counsel. The opinion does not indicate it "was persuaded" by this argument as stated by the majority in footnote 6.

It is clear that it is our duty to review closing remarks *in context* and determine if they have the effect of causing a fixed bias or hostility. The remarks, in context, are as follows:

Lastly, I will ask for the courage of all of you to reach a verdict which is consistent with the evidence. I am not permitted to ask you to reach or tell you what I believe in terms of certain evidence, who I believe and why I believe them because what I say really is not important at all. I am also prohibited from doing that, properly so, by the Supreme Court of our Commonwealth because you, these 12 people here are the people that will determine the facts.

Now, I mentioned power. What do I mean by that? Well, power is the fact that you as jurors in this case will actually make this system in this City work. You make it work. You know, some of us feel and many times you have heard that the greatest privilege or power that we have is to vote. Well, that is very true for many, many different reasons, but some of us at times think that in the Presidential election, there are so many millions of votes or in the Governor's election or Mayor and going down, of course, from millions of votes to hundreds of thousands that sometimes, maybe our vote doesn't count. Well, that is not true. Our vote counts very much. And because of our ability to vote, we can, in fact, see eventually things occurring through people or through legislation.

Well, your power is something else. The power of being a juror and the power of actually taking part in the criminal justice system of which you are definitely a part at this point, is very significant, indeed, because what do I mean? I simply mean that the 12 of you, when you

reach a decision, no matter what it is, it is to a certain extent final and it is to a certain extent immediate. You will not have to wait to see if that bill you wanted to be passed or whether the President will abide by what he said in his campaign. Your decision will be final to a certain extent and immediate.

I say, final to a certain extent because if you acquit both these gentlemen, they go never to come back, never to see this charge and never to have to answer again. That is final. If you convict them of first degree murder or a lesser degree depending upon your own view and based on the evidence, of course, there are appeals and there may be reversals later on because of evidentiary problems, but at least there is to an extent a finality to that also.

So that is why I say to all of you, the responsibility that Judge Richette very early in her comments to all of you means so much.

THE COURT: Excuse me, Mr. McGill. I really do think that you ought to add that the implications of a verdict should play no role in their reaching a verdict. ·

[Prosecutor]: Oh, yes, very definitely. Thank you, Judge.

THE COURT: I think that should be the final thing to what you just said.

[Prosecutor]: The implications, all of that is not to take any part in your verdict but understand that your verdict is indeed an immediate action. You are powerful, so please take that responsibility very seriously, as I am sure all of you have by the attention that you have been paying to all the people.

(Trial Transcript, pp. 1260–62)

These remarks fail to rise to the levels of improprieties found in the cases cited by the majority. Specifically, in *Commonwealth v. Connors*, 311 Pa.Super. 553, 458 A.2d 190 (1983), this court found a statement that a "verdict of not guilty would acquit appellant and render the Commonwealth powerless to retry him" was within the bounds of proper advocacy.

Furthermore, I find the judge's remarks, which were *immediately* made, did have a curative effect. Although not spoken to the jury, these remarks were made in the jury's presence and obviously for its benefit. This is not a case where the trial judge's statement was "generalized and abstract to the point of inaccuracy." Although the trial judge—a most experienced jurist—used a subjunctive choice of words, it was clear that her remarks were more than "mere suggestion". The case cited by the majority, *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976) involved a scenario where a trial judge took *no* direct action to ensure that a jury was not exposed to extensive prejudicial publicity but "merely suggested" they read a good book instead of reading the newspaper or watching the news. The "suggestion" made by the trial judge in the case before us was in fact a direct action which did have curative effects.

The majority would have us believe the case before us is distinguishable from *Baker*, supra, where the trial judge "clearly and succinctly" instructed the jury that statements by counsel could not be considered as evidence. Actually, the trial judge in the case before us not only gave the same generalized instruction approved by the *Baker* court, but went one step further and made specific, curative remarks.